Jack DEES *v.* Sylvia Jane DEES

CA 88-345                                                     771 S.W.2d 299

Court of Appeals of Arkansas
En Banc
Opinion delivered May 31, 1989

*Honey & Honey, P.A.*, for appellant.

*Charles A. Yeargan*, for appellee.

JOHN E. JENNINGS, Judge. Jack Dees appeals from an order

of the Pike County Chancery Court dated September 13, 1988, which found him in contempt of court for nonpayment of child support and sentenced him to thirty days in jail. His sole argument here is that the court erred in finding him in contempt. We agree and reverse.

The parties were divorced on January 7, 1982. The decree incorporated by reference a property settlement agreement between the parties. The agreement provided that appellant would have custody of the two oldest children and appellee would have custody of the youngest. It contained three provisions dealing with child support.

> Defendant [Appellant] will pay to the Plaintiff through the registry of the Court the sum of $100.00 weekly child support.
>
> In the event that Plaintiff should remarry, then in that event, each party will support the minor children in their home.
>
> The parties agree that the provisions of this agreement relating to custody and support of the children are subject to the modification and approval of this Court and that the other terms relating to property are contractual.

On November 14, 1984, custody of all three children was placed in the appellee.

In September 1986, appellee filed a petition for citation for contempt alleging that appellant was behind in the payment of child support. Sometime later that month appellee remarried. The hearing on that petition was held on May 6, 1987. Appellant was represented by counsel but did not personally appear. The trial court granted appellee a judgment for $3,500.00, representing arrearages accrued to May 1, 1987. There is no indication that the appellant asked the court to relieve him of his duty to pay child support at this time, despite the provision in the decree. The court's order neither relieved the appellant from paying nor imposed a new obligation on him, and no appeal was taken from the order.

Another petition for citation was filed approximately one year later. It again contained an allegation that appellant was in

arrears in paying child support. At a hearing on July 20, 1988, the chancellor found that appellant was in arrears in the amount of $5,700.00 since May 6, 1987, and that he was in contempt "for the willful non-payment of child support as ordered by the court." The chancellor sentenced appellant to thirty days in jail and expressly continued child support at the rate of $100.00 per week. Only the propriety of the court's finding of contempt and consequent jail sentence are raised on this appeal.

■■ Unquestionably the chancellor had authority to punish the appellant for willful disobedience of an order of the court. *See Hervey* v. *Hervey*, 186 Ark. 179, 52 S.W.2d 963 (1932). In the case at bar, although the decree clearly directs the appellant to pay child support, it also provides that should appellee remarry "each party will support the minor children in their home." It is conceded that at least since September, 1986, the appellee was remarried, and did have primary custody of all three children. The appellant cannot be found in willful contempt of an order of the court if he has not violated that order. The general principles stated in 17 Am. Jur. 2d *Contempt*, § 52 are applicable here:

> Before a person may be held in contempt for violating a court order, the order should inform him in definite terms as to the duties thereby imposed upon him, and the command must therefore be express rather than implied. Indefiniteness and uncertainty in a judgment, order, or decree may well constitute a good defense in proceedings for contempt based on violation of the judgment, order or decree. The very nature of the proceeding in either civil or criminal contempt for an alleged disobedience of a court order requires that the language in the commands be clear and certain. Whether the allegedly violated order contains such language depends upon the circumstances of the individual case.

> In determining, in contempt proceedings, whether an order has been violated, the order will not be expanded by implication beyond the meaning of its terms when considered in the light of the issues and the purpose for which the suit was brought. The order must be so specific and definite as to leave no reasonable basis for doubt as to its meaning.

We recognize that the appellant's unilateral termination of

child support, without obtaining prior approval by the court, may render him liable for arrearages accruing until approval is obtained. *See e.g., Thompson* v. *Thompson*, 254 Ark. 881, 496 S.W.2d 425 (1973); *Stracener* v. *Stracener*, 6 Ark. App. 1, 636 S.W.2d 877 (1982). But exposure to civil liability is not the question here — the question is whether the appellant can be said to be in willful contempt of an order issued by the chancery court.

Appellee contends that appellant's failure to ask the court, at the earlier hearing, to relieve him of his child support obligation and his making of several child support payments even after that hearing demonstrate a lack of reliance on the divorce decree. Appellant, however, need not demonstrate reliance to avoid a finding of contempt, if he is not in violation of the express provisions of the decree.

Reversed.

ROGERS, J., dissents.

JUDITH ROGERS, Judge, dissenting. I respectfully dissent. In order to fully explain my position, it is necessary to supplement the factual situation as described in the majority opinion.

In early September of 1986, appellee filed a petition for contempt, alleging among other things that the appellant was delinquent in his payment of child support. Sometime later that month, appellee remarried. Appellee filed an amended petition in February of 1987, which reflected that fact as the style of the case shows her married name, Stone. A hearing was held on appellee's petitions on May 6, 1987. The appellant did not appear, although he was represented by counsel at the hearing. The court reduced to judgment an arrearage in child support, which accrued up to May 1, 1987. From this order, it is apparent that the trial court treated his obligation to pay child support as continuing, despite the fact that the appellee had remarried and in spite of the language in the property settlement agreement that his duty to pay would terminate as of the appellee's remarriage. No relief was requested from the judgment, and no appeal was taken. After the entry of this order, appellant continued to make payments of child support.

At the hearing on the present matter the appellant offered by way of explanation that it was his understanding that the child

support ordered was exclusively for the benefit of the youngest child Gordon, and that his failure to pay should be excused for the period of time that Gordon had lived with him. Appellant testified that Gordon had been with him from July 1986 to January 1987. However, the record reveals that two of the only three payments made in 1986 were made during this time period. The appellant also argued, as he does on appeal, that he was under no duty to pay because the appellee had remarried. This issue was raised as an afterthought, as it was brought out on cross-examination of the appellant.

It is my view of the law that the appellant remained obligated for the payment of child support, and that it was incumbent on the appellant to seek enforcement of the agreement before his obligation terminated by placing the issue before the court.

In the context of the duty to pay child support beyond the age of a child's majority, it has long been held that the payor spouse cannot of his own volition cease or reduce the payment of child support without first obtaining a ruling from the court. *See Thompson* v. *Thompson*, 254 Ark. 881, 496 S.W.2d 425 (1973); *Jerry* v. *Jerry*, 235 Ark. 589, 361 S.W.2d 92 (1962).

In *Jerry* the Supreme Court stated that ordinarily there is no legal obligation on the part of a parent to contribute to the maintenance and support of his children after they become of age. Yet, the court also recognized that the trial court, and that court alone, had the right to change an award of support, and that the trial court, had the facts and circumstances justified, could have continued the payment of child support beyond the age of majority. It is also true that a contract between divorced parties with regard to their children's support, whether or not adopted by the court, is not binding upon the court and is subject to modification as the circumstances justify, without the parties' consent. *Hitt* v. *Maynard*, 265 Ark. 31, 576 S.W.2d 211 (1979). *See also, Thurston* v. *Pinkstaff*, 292 Ark. 385, 730 S.W.2d 239 (1987). This is especially significant in this case as the language in the property settlement agreement is subject to interpretation.

The case of *Stracener* v. *Stracener*, 6 Ark. App. 1, 636 S.W.2d 877 (1982), involved a provision with regard to alimony stating that "the defendant will pay to the plaintiff the sum of $400 per month as alimony as long as she remains single and

living as a single person." The appellee had been cited for contempt by his ex-wife for the failure to make alimony payments, to which he responded by asking that he be relieved from the obligation to pay, based upon his allegation that the appellant was no longer "living as a single person." In upholding the trial court's termination of the alimony payments, this court also agreed with the trial court that the appellee was responsible for the payments up to the time the issue was raised. The reasoning for so holding is more compelling in this case than in *Stracener v. Stracener, supra*, as this case concerns the payment of child support, as opposed to alimony. The appellant had the opportunity to raise the issue of appellee's remarriage at the May 1987 hearing, when the arrearage that was reduced to judgment included a period of time after appellees' remarriage, yet he failed to do so at that time or afterwards, and he did not assert this position until one year after the May 1987 judgment was entered.

The case of *Storey* v. *Ward*, 258 Ark. 24, 523 S.W.2d 387 (1975), while similar, is factually distinguishable from the case at bar. In *Storey* v. *Ward*, it was held that there is no principle of public policy against a contract provision which terminates the duty of support upon a spouse's remarriage. Moreover, it was stated that parents cannot permanently bargain away the duty to pay child support, and hence the trial court has the continuing power to modify the original decree, although the trial court could not retroactively render such a modification.

There the wife had foregone the payment of child support upon her remarriage in 1965 pursuant to agreement, and did not press her claim for an alleged arrearage until 1973. In the instant case, the appellee preserved her right to receive the payment of child support, whereas the appellant by his actions was not diligent in pursuing his claim.

The chancery court has the power to order imprisonment in contempt proceedings as punishment for the violation of its orders, to coerce obedience to its orders for the benefit of its litigants, or a merger of the two, subject to certain limitations. *Alexander* v. *Alexander*, 22 Ark. App. 273, 742 S.W.2d 115 (1987). In cases of civil contempt, the objective is the enforcement of the rights of the private parties to litigation. On the other hand, the primary reason for punishment for criminal contempt is

the necessity for maintaining the dignity, integrity and authority of, and respect toward, courts, and the deterrent effect on others is just as important as the punishment of the offender. *Warren* v. *Robinson*, 288 Ark. 249, 704 S.W.2d 614 (1986); *Dennison* v. *Mobley*, 257 Ark. 216, 515 S.W.2d 215 (1974).

In making a determination whether the contempt is civil or criminal in nature, the United States Supreme Court recently offered guidance as to this question in *Hicks* v. *Feiock*, 485 U.S. 624 (1988). The Court said:

> In *Gompers*, decided early in this century, three men were found guilty of contempt and were sentenced to serve 6, 9, and 12 months respectively. The Court found this relief to be criminal in nature because the sentence was determinate and unconditional. 'The distinction between refusing to do an act commanded, — remedied by imprisonment until the party performs the required act; and doing an act forbidden, — punished by imprisonment for a definite term; is sound in principle, and generally, if not universally, affords a test by which to determine the character of the punishment.' . . .
>
> . . .
>
> The distinction between relief that is civil in nature and relief that is criminal in nature has been repeated and followed in many cases. An unconditional penalty is criminal in nature because it is 'solely and exclusively punitive in character.' *Penfield Co.* v. *SEC*, 330 U.S. 585, 593 (1947). A conditional penalty, by contrast, is civil because it is specifically designed to compel the doing of some act.

In the case at bar, the appellant was sentenced to thirty days in the county jail. The relief was definite, and unconditional, and was thus criminal in nature. A criminal contempt citation requires proof beyond a reasonable doubt. *Ward* v. *Ward*, 273 Ark. 198, 617 S.W.2d 364 (1981). Upon review of criminal contempt proceedings, the appellate court reviews the evidence as in ordinary criminal cases to determine whether the evidence, when given its full probative force, is sufficient to sustain the findings of the trial court, and such findings will not be disturbed unless there

is no substantial evidence to support them. *Dennison* v. *Mobley, supra.*

In finding that the appellant's failure to pay was willful, the chancellor could have concluded that the appellant placed no particular reliance on either of the contingencies offered by the appellant to explain his failure to pay. Furthermore, a review of the record reveals that the appellant had a history of failing to make his child support payments as ordered. Two body attachments had been issued previously, and it appears that at the hearing in May of 1987 the trial court did not hold him in contempt, but only reduced the arrearages to judgment. Giving due deference to the trial court's superior ability to assess the credibility of the witnesses, and based on the peculiar factual circumstances of this case, I simply cannot say that the finding of the court is not supported by substantial evidence. Nevertheless, the majority frames the issue in this case as to whether there was an extant order requiring the appellant to pay child support. Since they find no order, they conclude there was no contempt violation. In my opinion, the appellant continued to be under a duty to pay, and that this duty was reaffirmed by the court's order in May of 1987. Further, in my view his obligation and the order reciting this duty remained in effect until the appellant sought an interpretation of the provision in the agreement which would be a specific court order relieving him of the obligation to pay child support. It is, therefore, obvious to me that there was a support order in effect at the time of the present hearing, and that the scope of our review is whether there is substantial evidence to support the chancellor's finding that the appellant's failure to pay was willful — which I believe is amply supported by the record.

The majority places undue reliance on the appellant's belated excuse that the provision in the decree terminated his performance to justify his failure to pay. The record is clear that he never followed this provision, and never asked the trial court to construe the decree in this manner until he was cited for contempt. It is difficult to imagine given the history of this case, involving the appellant's repeated disregard of court orders, and based on the appellant's purported reliance on the decree only when it arguably inured to his benefit, that my fellow judges can excuse this egregious behavior.

I cannot follow the majority's logic in holding the appellant could be civilly responsible, for arrearages, even though they simultaneously hold that there is no order requiring him to pay child support, and yet not be subject to the contempt power of the court. As a result of the majority opinion, courts will be left with the often ineffective remedy of granting judgment when arrearages cannot be swiftly and effectively collected. It may also lead to the undesirable result of litigants interpreting their own decrees and orders, notwithstanding that this role is within the province of the trial court. It will result in litigants not affirmatively seeking the court's guidance when they choose not to make support payments, and will abrogate the court's role of enforcement of litigants' rights and responsibilities. We should not ask courts to enforce orders, and simultaneously strip them of their tools to accomplish this task.