Richard Todd SLUSHER *v.* Ganell SLUSHER (now Dunn)

CA 89-291                                    786 S.W.2d 843

Court of Appeals of Arkansas
Division II
Opinion delivered April 4, 1990

*John H. Bradley*, for appellant.

*Daniel G. Ritchey*, for appellee.

JOHN E. JENNINGS, Judge. Richard Slusher appeals from an order of the Mississippi County Chancery Court which awarded to his former wife, Ganell Slusher, the primary custody of the parties' child, Katherine Elizabeth. The sole argument on appeal is that the trial court lacked jurisdiction. We disagree and affirm.

The Slushers were married on November 11, 1983, and the child was born on November 12, 1985. They were divorced by a decree entered in the Mississippi County Chancery Court on September 4, 1987. At that time the parties lived in Blytheville, Arkansas, where Mr. Slusher was stationed in the Air Force.

In the divorce decree the court approved a settlement agreement entered into by the parties and awarded "joint custody" of the child with the parties to have physical custody on an alternating calendar month basis. The same agreement also contained the following provision:

> The agreement regarding joint custody is made with the understanding and intent that both parties continue to reside in this area until the spring of 1988 (approximately April) at which time, both parties anticipate that they will relocate to the Cincinnati, Ohio area.

Mr. Slusher left military service in February of 1988 and moved to Cincinnati, Ohio, to live with his parents. He took the child with him at that time. From late February 1988 until late September 1988 the parties alternated physical custody on a somewhat sporadic basis, and the child spent more time in Ohio than she did in Arkansas.

On September 29, 1988, Mrs. Slusher filed a petition in the Mississippi County Chancery Court to modify the decree of divorce, seeking primary custody of the child. The petition alleged that she had remarried on May 27, 1988, that the parties had attempted to alternate custody on a calendar month basis but that the situation had become unworkable, and that it was not in the best interest of the child that the alternating custody

arrangement continue. Meanwhile, Mr. Slusher filed a petition seeking primary custody of the child in the Court of Common Pleas in Butler County, Ohio, on September 26, 1988. In affidavits attached to his petition, Mr. Slusher alleged that the child lived with him in Ohio, that he had had physical custody of the child since September 4, 1987, that Mrs. Slusher had exercised only "limited visitation," that he was fearful unless a temporary order was granted that Mrs. Slusher would remove the child to "parts unknown," and that Mrs. Slusher had taken the child by force on September 26, 1988.

On September 30, 1988, the Ohio court entered an ex parte order awarding temporary custody of the child to Mr. Slusher. On October 31, 1988, the Ohio court entered an order denying a motion to dismiss filed by Mrs. Slusher. The order recited that the court had attempted to contact the Arkansas chancellor, but did not say how. The court found that neither Ohio nor Arkansas was the home state of the child, but that it could exercise jurisdiction under Ohio Revised Code 3109.22(2)[1] because "[i]t is in the best interest of the child that a Court of this state assumes jurisdiction because the child and his parents, or the child and at least one contestant, have significant connection with this state, and there is available in the state substantial evidence concerning the child's present or future care, protection, training, and personal relationships." The Ohio court found that Mr. and Mrs. Slusher were originally from Ohio and still have family there, and that they were in Arkansas only because of Mr. Slusher's military service.

On November 16, 1988, Mr. Slusher filed a motion to dismiss for lack of jurisdiction in the Mississippi County Chancery Court. On December 2, 1988, the Mississippi County chancellor entered an order denying the motion to dismiss, finding that it had jurisdiction over the custody dispute, and directed that the child be returned to Arkansas. Part of the basis for the court's order was the following stipulation of the parties:

> (a) That both parties, together with the child lived in Arkansas when the Decree of September 4, 1987, was

---

[1] This Ohio provision is identical to Ark. Code Ann. § 9-13-203(a)(2) (1987), a part of our Uniform Child Custody Jurisdiction Act.

entered;

(b) That the child was born in Arkansas and resided in this state until February 24, 1988, when the defendant moved to Ohio and took the child with him;

(c) That the child was in Ohio with the defendant except when she was with the plaintiff for the following periods of time:

(1) Three weeks in April, 1988,

(2) Eight days in June, 1988,

(3) July 2nd, to July 30th, 1988,

(4) September 3, to September 6, 1988,

(5) September 23, to October 1, 1988;

(d) That the parties met in Kentucky on September 23, 1988, at which time defendant delivered the child to the plaintiff;

(e) That the delivery of the child to the plaintiff by defendant on September 23, 1988, did not involve physical force;

(f) That on September 30, 1988, the Court in Ohio entered an Order awarding custody of the child to defendant, and this Order was entered without prior notice to plaintiff;

(g) That on October 1, 1988, defendant obtained the custody of the child from plaintiff by virtue of the Ex Parte Order of the Ohio Court entered on September 30, 1988.

The court's order recited that the Arkansas chancellor had written to the Ohio judge on October 28, 1988. The letter stated that the chancellor felt he should determine the jurisdictional issue before proceedings continued in the Ohio court. The chancellor's December 2 order also found that the September 30, 1988, order entered by the Ohio court was invalid for several reasons, including (1) that it was based on a false affidavit, (2) that it was entered without notice to the mother, and (3) that the Arkansas court had not been contacted prior to its entry in violation of the provisions of the Uniform Child Custody Jurisdiction Act, as well as the Parental Kidnapping Prevention Act, 28

U.S.C. § 1738A.

On March 24, 1989, the Mississippi County Chancery Court entered an order modifying the decree of divorce to award primary custody of Katherine to Mrs. Slusher, subject to Mr. Slusher's visitation rights. In that order the court found that it had never relinquished jurisdiction, that the Ohio court was without jurisdiction, that Arkansas was the home state of the child on the date of the commencement of the proceedings in Arkansas, and it was furthermore in the best interest of the child that the Arkansas court retain jurisdiction under Ark. Code Ann. § 9-13-203(a)(2) (1987).

The case is, as the chancellor observed, a typical custody dispute involving questions under the Uniform Child Custody Jurisdiction Act and the Parental Kidnapping Prevention Act. The two acts must be read together, and where there is a conflict the PKPA controls. *Norsworthy* v. *Norsworthy*, 289 Ark. 479, 713 S.W.2d 451 (1986).

Initially, appellant contends that the chancellor's finding, that Arkansas was the home state of the child when the Arkansas proceedings were commenced, is not supported by the record. We disagree. "Home State" is defined by 28 U.S.C. § 1738A(b)(4) as:

> . . . the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons. Periods of temporary absence of any of such persons are counted as part of the six-month or other period;

The definition of home state used in the PKPA is identical to that used in the UCCJA, Ark. Code Ann. § 9-13-202(5). Clearly, Arkansas was the home state of the child at the time of the entry of the decree of divorce. When the chancellor entered the decree of divorce providing for joint custody, in the sense that the actual physical custody of the child would be shared by the parties on an equal time basis, Arkansas remained the home state. We do not think that this status was affected by the

fact that the parties did not perfectly observe the provisions providing for transferring the child back and forth on a calendar month basis. To the extent that the child spent more time in Ohio than in Arkansas during the year 1988, the time spent with her father in excess of that provided by the decree was in the nature of a "temporary absence" within the meaning of 28 U.S.C. § 1738A(b)(4). Our holding would seem to be in keeping with the stated policies of the UCCJA to avoid jurisdictional competition and conflict between courts of different states in child custody matters and to discourage continuing controversies over child custody. *See* Ark. Code Ann. § 9-13-201 (1987).

In the case at bar, appellant's conduct was exactly the type which the UCCJA was designed to prevent or counteract. *See Blosser* v. *Blosser*, 2 Ark. App. 37, 616 S.W.2d 29 (1981).

Appellant relies on Ark. Code Ann. § 9-13-206(a):

> A court of this state shall not exercise its jurisdiction under this subchapter if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this subchapter, unless the proceeding is stayed by the court of the other state because this state is a more appropriate forum or for other reasons.

However, unlike the UCCJA, under the PKPA, jurisdiction is given to the "home state" to the exclusion of other jurisdictional considerations. *Garrett* v. *Garrett*, 292 Ark. 584, 732 S.W.2d 127 (1987). Furthermore, the chancellor found that the Ohio proceeding was not held in substantial conformity with the UCCJA, and that finding is supported by the record.

Finally, appellant argues that the statement in the settlement agreement, that both parties "anticipated" that they would move to Ohio sometime in 1988, constituted an agreement between the parties as to the forum in which to litigate future custody disputes and thus the Arkansas chancellor erred in assuming jurisdiction under Ark. Code Ann. § 9-13-207(c)(4). There are two difficulties with this contention. First, we do not think that the provision in the decree can reasonably be read as an agreement on the forum for future litigation. Second, under Ark.

Code Ann. § 9-13-207, it is a matter within the trial court's discretion whether to decline to exercise its jurisdiction when the parties have agreed on another, appropriate forum.

We conclude that the trial court did not err in exercising jurisdiction in this case.

Affirmed.

CRACRAFT and COOPER, JJ., agree.