Edward James SNISKY *v.* Sharon Kay WHISENHUNT

CA 93-163                                               864 S.W.2d 875

Court of Appeals of Arkansas
Division II
Opinion delivered November 3, 1993

*David Goldman, P.A.*, for appellant.

*Larry Honeycutt*, for appellee.

JUDITH ROGERS, Judge. The appellant, Edward James Snisky, appeals from an order of the Garland County Chancery Court in which he was found in contempt and which provided a period of visitation for the parties' minor child with appellee, Sharon Kay Whisenhunt. On appeal, appellant raises two issues in which he contends that the chancery court lacked jurisdiction and thus committed error by both holding him in contempt and in granting appellee visitation with the child. We disagree with appellant's argument on the first point and affirm the finding of contempt; however, we agree with his second argument and reverse the order of visitation.

The record discloses that the parties in this case cohabitated for a time in the Bahamas and later in the State of Florida. On May 30, 1989, a male child was born of this unsolemnized union. Appellee thereafter left Florida with the child and returned to her home in Hot Springs, Arkansas. There, in the Garland County Chancery Court, she initiated a paternity action against appellant. On February 4, 1991, a consent order was entered whereby appellant was recognized as the natural father of the child. As per their agreement, appellee was granted custody of the child, while appellant was given certain rights of visitation and was also required to pay child support. The agreed order further pro-

vided that "[t]he parties have consented to the Court having both in person [sic] and in rem jurisdiction of this matter, as well as retaining such jurisdiction for any further Orders of Courts."

It appears that the parties resolved their earlier differences with the result that appellee and the child moved back to Florida to live with appellant. The case file from the Garland County Chancery Court contains a letter written by appellant's counsel, dated June 13, 1991, informing the Court of the parties' reconciliation and their agreement to abate the payment of child support. The letter also states that "[b]oth parties are aware that if the situation in Florida does not work to the benefit of all parties, that an action can be brought in Garland County for adjudication of any new issues which may arise."

After residing in Florida for roughly seven months, appellee again returned to Arkansas with the child. On April 9, 1992, shortly after appellee's departure, appellant obtained an ex parte restraining order from the Circuit Court of Broward County, Florida, which prohibited appellee from removing the child from the county and granted temporary custody to appellant. It appears from the record that appellant obtained this emergency order based on his representations that appellee's whereabouts were unknown and that the child was in danger due to appellee's drug dependency. On April 15, 1992, appellee filed a petition in the Garland County Chancery Court seeking, among other things, the reinstatement of child support. Appellee further asked the chancery court to confirm custody of the child with her, to confirm the court's jurisdiction, and not to give the restraining order entered by the Florida court full faith and credit. On May 20, 1992, appellee also filed a motion asking that appellant be held in contempt, alleging that appellant's institution of a custody action in Florida was a violation of their agreement contained in the court's order of February 4, 1991, that custody matters be litigated in Arkansas.

After having the issue briefed, the chancellor declined to exercise jurisdiction over the matter of custody based on the finding that Florida had become the home state of the child under both the PKPA and UCCJA. An order to that effect was entered on May 27, 1992, and it appears that custody of the child was transferred to appellant in accordance with the Florida court order.

The case thereafter proceeded to a hearing on appellee's motion for contempt. By order of August 23, 1992, the chancellor ruled that appellant was in contempt of the consent order for having brought a custody action in the Florida court. As a result, appellant was required to pay $4,526 into the registry of the court, plus $775 for costs. In addition, the chancellor ordered appellant to bring the child to Arkansas for visitation with appellee from July 4 to August 4, 1992. In the order, the chancellor also made a specific finding that appellant had misled the Florida court in securing the *ex parte* order. This appeal followed.

In this appeal, no questions are presented involving the interpretation of the provision in the consent order preserving jurisdiction in the Arkansas Court. In other words, we are not asked to decide such issues as whether the jurisdictional provision of the agreed order was sufficiently definite and certain in its terms to support a finding of contempt,[1] or whether the provision constituted a valid forum selection clause as opposed to a simple retention of jurisdiction provision.[2] Indeed, in his response to appellee's motion for contempt, appellant acknowledged that the order accurately reflected the parties' agreement that Arkansas would remain the setting for future custody litigation. Instead, as his first point, it is appellant's sole contention that the chancellor did not have jurisdiction over the contempt proceeding once jurisdiction of the custody matter was relinquished to the Florida Court. We do not agree.

The chancellor here deferred to the Florida court's exercise of jurisdiction over the issue of custody for the reason that Florida was the child's home state under both the PKPA and UCCJA. This decision was based on evidence that the child had

---

[1] The general rule is that before a person may be held in contempt for violating a court order, the order must be in definite terms as to the duties imposed upon him and the command must be expressed rather than implied. *Arkansas Department of Human Services* v. *Gruber*, 39 Ark. App. 112, 839 S.W.2d 543 (1992).

[2] Choice of forum clauses in contracts have generally been held binding, unless it can be shown that the enforcement of the forum selection clause would be unreasonable and unfair. *Nelms* v. *Morgan Portable Building Corp.*, 305 Ark. 284, 808 S.W.2d 314 (1991). For cases discussing such clauses in the context of custody litigation, see *Crites* v. *Alston* , 837 P.2d 1061 (Wyo. 1992); *In re Marriage of Beuche* , 550 N.E.2d 48 (Ill. App. Ct. 1990); *In re Marriage of Hilliard* , 533 N.E.2d 543 (Ill. App. Ct. 1989).

lived in Florida for the preceding seven months, as well as most of his young life. Despite the provision in the consent order, the chancellor acted well within his discretion in declining jurisdiction over the issue of custody. *See Slusher v. Slusher*, 31 Ark. App. 28, 786 S.W.2d 843 (1990); Ark. Code Ann. § 9-13-207 (1987). However, under the peculiar circumstances of this case, we do not view the chancellor's decision to relinquish jurisdiction over the custody matter as having deprived the court of jurisdiction over the contempt proceeding.

The PKPA and UCCJA only specify circumstances under which a court has jurisdiction to make a "child custody determination." Looking to the PKPA, "child custody determination" is defined as a "judgment, decree, or other order of a court providing for the *custody or visitation* of a child, and includes permanent and temporary orders, and initial orders and modifications." 28 U.S.C. § 1738A(b)(3) (1982) (emphasis supplied). The chancellor in this case simply declined to entertain jurisdiction of the pending custody determination, which involved the potential modification of the prior custody order. There is a distinction, however, between the *modification* of a custody decision and the *enforcement* of a previous court order. When modification of a previous custody order is at issue, the focus is on whether there has been a material change in circumstances and whether modification is in the best interest of the child. *Bennett v. Hollowell*, 31 Ark. App. 209, 792 S.W.2d 338 (1990). On the other hand, the subject of a contempt proceeding is whether the alleged contemnor willfully disobeyed a previous court order. *See e.g. Dees* v. *Dees*, 28 Ark. App. 108, 771 S.W.2d 299 (1989). In this instance, that portion of the order which the chancellor was asked to enforce through contempt did not involve any questions relative to a custody determination, as that term has been defined. At issue was solely whether appellant's actions were in violation of the agreed order. Since the question of appellant's contempt did not touch upon the subject of child custody, jurisdiction of the contempt proceeding was not governed by the PKPA. Therefore, the chancellor's refusal of jurisdiction over the custody matter pursuant to the PKPA did not affect the chancery court's inherent authority to enforce its order with regard to an issue unconnected with the custody determination. In sum, under these facts, we hold that the chancery court retained juris-

diction over the issue of whether appellant was in contempt of the agreed order.

As part of this first issue, appellant also contends that he cannot be held in contempt for taking advantage of the federal statute by filing an action for modification in the child's home state. While appellant's pursuit of custody in Florida was in keeping with the PKPA, his actions were, nevertheless, in disregard of his agreement, which was incorporated as an order of the court, that Arkansas remain the forum for custody litigation. As the argument is presented, we can find no error in the chancellor's determination that appellant not be allowed to disobey a court order with impunity.

As his second issue, appellant argues that the chancellor lacked jurisdiction to grant appellee visitation rights with the child. We agree that the chancellor's order of visitation was inconsistent with his decision favoring jurisdiction in the Florida court. As noted above, the definition of "custody determination" in the PKPA does include orders providing for visitation with the child. Once the chancellor declined jurisdiction over the custody determination, it follows that the chancery court no longer had jurisdiction to order a period of visitation. It is apparent that the chancellor's action was prompted by appellant's failure to bring the child to Arkansas for the hearing as appellant had assured the court he would do at a previous hearing. While the chancellor's dismay is understandable, we cannot uphold the order of visitation. We must therefore reverse on this point.

Affirmed in part; reversed in part.

JENNINGS, C.J., AND PITTMAN, J., agree.