**Joy Huntton Gouvitsa ARNOLD,**
**Plaintiff/Appellant,**

v.

**Gus Konstantine GOUVITSA,**
**Defendant/Appellee.**

Court of Appeals of Tennessee,
Western Section, at Knoxville.

April 3, 1987.

Application for Permission to Appeal
Denied by Supreme Court
Aug. 3, 1987.

Phillip C. Lawrence of Poole, Lawrence, Thornbury & Stanley, Chattanooga, for plaintiff/appellant.

W. Neil Thomas, III and Everett L. Hixson, Jr., Chattanooga, for defendant/appellee.

TOMLIN, Presiding Judge, Western Section.

This is one of two cases consolidated for consideration and disposition on appeal. This case is a custody contest between divorced parents which comes from the Circuit Court of Hamilton County. Its companion case is styled *In re: Tennessee Department of Human Services, In the Matter of: "A" and "B" v. Gus Konstantine Gouvitsa and Joy Arnold,* 735 S.W.2d 452 (Tenn.App.1987) (hereafter *"In re TDHS"*), which originated with the filing of a petition by the Tennessee Department of Human Services (hereafter "TDHS") in the Juvenile Court of the same county to have the children of Arnold and Gouvitsa declared dependent and neglected.

Following what can be labeled simply as a contempt hearing, the trial court changed custody of the parties' minor children from Mother to Father. Mother filed a complaint to set aside that order or to modify the award of custody. Following a full evidentiary hearing, the trial court ordered that the children should remain with Father. Both Mother and the children's guardian *ad litem* have appealed. For the reasons hereinafter set forth, we reverse the order of the trial court and remand the case to the Circuit Court of Hamilton County. Many of the facts are not in dispute. Mother and Father were divorced in September, 1983. Their agreement dealing with custody and property rights was approved by the trial court and incorporated into the final decree which awarded Mother a divorce on the ground of irreconcilable differences. Mother and Father were given joint custody of their two children.[1] Mother had become a member of a religious group called "Jehovah's Witnesses" some months prior to the divorce. It was the desire and intent of the court that the children should be exposed to different cultural and religious experiences.

Subsequently, on two separate occasions the trial court found Husband in contempt of court for violating certain provisions of the property settlement agreement. In July, 1984 Father was again found in contempt of court for failure to comply with previous orders of the court and was sentenced to the workhouse in Hamilton County for six months. At that time full and complete custody of the children was awarded to Mother. Following a hearing on Father's petition for contempt and to modify, the trial court ruled that custody of the children should remain with Mother. That same order provided that the minor child "A" should be seen by a psychiatrist for an evaluation and a report filed with the court.

Both "A" and "B" had reported acts of sexual abuse by Father prior to this order. "A" and "B" first reported being sexually abused by Father in November, 1984 following a weekend visitation. Mother immediately reported to incident to TDHS, who caused the children to be examined by a physician as well as a psychological counselor. As a result, the circuit court required that the children's visit with Father during the Christmas holidays be supervised. Following the Christmas visit with Father, both "A" and "B" again reported to Mother that they had been sexually abused by Father. In March, 1985 "A" reported further sexual abuse at the hands of Father. Mother again caused "A" to be examined by a medical doctor, who found no physical evidence of abuse. Shortly thereafter, Mother and Stepfather moved

---

**1.** Notwithstanding the fact that these children have been named in the pleadings and briefs thus far, this Court has elected to refer to them as either "the children" or "A" and "B."

the children to California in order to protect them.

On May 21, 1985 an order to show cause was issued by the trial court calling upon Mother to show cause why she should not be held in contempt of court for violating orders of the court. Although there is no proof either pro or con in the record, the trial court's order of June 10, 1985 reflects that notice of the hearing held on June 3, 1985 had been mailed to a school in California where "A" had applied for admission, and that the school had transmitted the notice to Mother. The order of the trial court states that Mother "refused to abide the prior orders of this Court regarding the parties' minor children and having fled this jurisdiction without notice to the Court or Defendant-Petitioner[2]...." The June 10, 1985 order, in addition to finding Mother in contempt, changed custody of both children from Mother to Father, with Mother's visitation rights to be subsequently determined.

Armed with this order, Father went to California and through court proceedings there obtained physical custody of the children. He then returned with the children to Tennessee. In August, 1985 Mother filed a motion for specific visitation, a motion to set aside the court's order of June 10, 1985 pursuant to Rule 60.02, T.R.C.P., and a petition to modify custody so as to place custody in her. The case was initially set for October 4, 1985 but was continued upon motion of Father, being reset for January, 1986.

In September, 1985, following the restoration of Father's custody, "B" reported additional acts of sexual molestation by Father. Mother reported this to TDHS. On November 11, 1985, TDHS filed a petition to have the children declared dependent and neglected due to alleged acts of sexual abuse by Father. On the same day, the juvenile court entered an interlocutory order holding that the children were subject to an immediate threat to their health and safety and at the same time granted temporary custody to TDHS. They were placed at Chambliss Children's Home. A guardian *ad litem* was appointed for the children shortly thereafter.

While this proceeding was pending, with the children then under the custody of TDHS, a hearing was held in circuit court in January and February, 1986 on Mother's petition to modify custody and to set aside the trial court's order of June 10, 1985. On March 7, 1986 the trial court ordered that the custody of the children should remain with Father subject to visitation rights of Mother. It is from this order that Mother has appealed.

It is important to note that in May and August, 1986 the juvenile court heard testimony on TDHS' petition. On August 19, 1986 that court found "A" and "B" to be dependent and neglected children and placed them in the custody of TDHS. Physical custody was granted to Mother, with Father having limited, supervised visitation. Father then perfected his appeal to the circuit court. Following the docketing of the case there, Father filed a motion to dismiss. Following a hearing before Judge Samuel H. Payne, the same judge who heard and decided the case here under consideration, the court dismissed the petition on the ground that the prior custody order of March 7, 1986 was *res judicata*. TDHS perfected its appeal to this Court, at the same time obtaining a stay of the circuit court's order, which stay is still in effect. We have disposed of that appeal in a separate opinion.

## I. THE ISSUE OF JURISDICTION.

First and foremost, the jurisdiction of the circuit court to render a judgment on March 7, 1986 on Mother's petition to modify custody and to set aside the trial court's order of June 10, 1985 must be addressed.

---

**2.** In argument, counsel for Father conceded that there was not in existence any court order restraining Mother and the children from leaving Tennessee or to require the court's consent prior to leaving the jurisdiction. Counsel likewise conceded that the sole remaining basis for finding Mother in contempt of court was that she placed herself in position, by moving, of being unable to carry out the court's order and present "A" to a Chattanooga psychiatrist for evaluation.

In the companion case, *In re TDHS*, filed of even date herewith, this Court has held that the Circuit Court of Hamilton County was without jurisdiction when it entered its order of March 7, 1986. We held that insofar as custody is concerned, exclusive jurisdiction was vested in the juvenile court upon the filing of the petition by TDHS to have the children declared dependent and neglected. T.C.A. § 37-1-103 reads in part as follows:

> *Exclusive original jurisdiction.* (a) The juvenile court has exclusive original jurisdiction of the following proceedings, which are governed by this part:
>
> (1) Proceedings in which a child is alleged to be delinquent, unruly, or dependent and neglected, or to have committed a juvenile traffic offense as defined in § 37-1-146;

That this jurisdiction was intended to be exclusive is reinforced by the omission of dependency and neglect proceedings from T.C.A. § 37-1-104, which lists the various proceedings in which the juvenile court shares concurrent jurisdiction with other courts.

In addition, both the text authorities and Tennessee case law recognize the exclusive jurisdiction of the juvenile courts in dependency and neglect proceedings.

> The jurisdiction of a court to entertain proceedings involving delinquent or dependent children is usually held to be exclusive, and the court cannot be deprived thereof by proceedings in another court in a divorce case. So, where a court having jurisdiction or proceedings affecting the custody of a child to one parent, there is nothing to prevent the juvenile court from finding that the child is neglected or is dependent, and therefore should be taken away from the parent. On the other hand, the juvenile court will not adjust parental disputes concerning the care and education of a minor, such matters being for a court of equity where the parents are actual parties. A trial for delinquency based on the ground that the infant had violated the criminal law is not a criminal trial within the meaning of constitutional and statutory provisions conferring on particular courts exclusive jurisdiction over the trial of criminal cases, and hence the juvenile court is not ousted of jurisdiction in the premises.
>
> The jurisdiction of the court entertaining delinquency or dependency proceedings is continuing, to the exclusion of any other court of concurrent jurisdiction, and except as jurisdiction may be relinquished in accordance with statute, once a juvenile court has entertained jurisdiction over a child that court must take affirmative action to dispose of the case in one of the ways provided by statute before jurisdiction can terminate. Ordinarily, the jurisdiction of the court continues until the child reaches majority, or the age specified by statute....

43 C.J.S. *Infants* § 53 (1978).

This issue was first passed upon by the appellate courts of this state in the case of *Marmino v. Marmino*, 34 Tenn.App. 352, 238 S.W.2d 105 (1950). In *Marmino*, a divorce proceeding in which custody was an issue, the chancery court declined to make a ruling of custody, noting in its decree that the parties' children were at that time under the jurisdiction of the juvenile court. It appears that this jurisdiction was obtained pursuant to a judgment of dependency or delinquency. Mr. Marmino appealed, asserting that it was error for the chancery court to share its jurisdiction with the juvenile court and that the chancery court was obliged to make an order of custody. In affirming the chancellor, Judge Swepston, later Justice Swepston, stated:

> We think it is a sound and simple view that the Chancery Court never loses jurisdiction of the question of custody, that is, the subject matter as part of a divorce proceeding, but the right and power to exercise that jurisdiction upon the person or the minor may be suspended temporarily or permanently either prior to or after the inception of the divorce case by reason of the exercise by the Juvenile Court of the special, exclusive jurisdiction conferred on it to determine whether the minor is "dependent" or "delin-

quent", as defined by the Statute and hence necessarily to determine custody. *Id.* at 108.

In the later case of *Kidd v. State*, 207 Tenn. 244, 338 S.W.2d 621 (1960), a case more similar on the facts to the case under consideration, Justice Swepston, writing for the Supreme Court, after reaffirming *Marmino*, stated:

> We, therefore, are of opinion and so hold that the order of September 2, 1955, is a valid order and had the effect among other things of placing the permanent custody of this child under the control of the Judge of the Juvenile and Domestic Relations Court of Knox County while exercising its jurisdiction of the custody of a delinquent, dependent or neglected child until the same should reach its full age and that no other court had or has any right or power whatever thereafter to change its custody or to make any orders in regard thereto, except with the consent of the Juvenile and Domestic Relations Court exercising its jurisdiction as a Juvenile Court.

*Id.* at 625. *See also State ex rel. Baker v. Turner*, 562 S.W.2d 435 (Tenn.App.1977).

In the case at bar, TDHS' petition alleging dependency and neglect and the subsequent order of the juvenile court awarding temporary custody to TDHS were both filed prior to the custody hearing in the circuit court. On the basis of *Marmino* and *Kidd*, we hold that the circuit court had no right or power to change custody or to make any orders in regard thereto so long as the matter was pending in juvenile court or unless the juvenile court otherwise consented. Inasmuch as the circuit court in this case lacked jurisdiction, its order of March 7, 1986 ordering that custody remain with Father is void. *See Hamm v. Hamm*, 30 Tenn.App. 122, 204 S.W.2d 113 (1947).

While lack of jurisdiction was not specifically raised in the case at bar, it was raised in *In re TDHS* which, as already noted, was consolidated with this case for hearing and disposition. Furthermore, lack of subject matter jurisdiction may be raised at any time by the parties or by the court.

Rule 12.08, T.R.C.P. *See also Gillespie v. State*, 619 S.W.2d 128 (Tenn.App.1981).

## II. THE COURT'S ORDER OF JUNE 10, 1985.

 While we have held that the order of March 7, 1986 herewith appealed from is void for lack of jurisdiction, we feel constrained further to consider and dispose of what is in our opinion a prior voidable order by the circuit court—that of June 10, 1985, which had the effect of changing custody of the minor children from Mother to Father. The scenario at that time and shortly prior thereto was as follows: Mother had been awarded exclusive custody of the children following the final decree of divorce. Because of her apparent concern for the children due to the alleged charges of sexual abuse by Father, Mother and Stepfather moved to California with the children. As noted earlier, the court below issued a show cause order calling upon Mother to show cause why she should not be held in contempt of court. At that time Mother was under no judicial restraint from leaving the state with the children.

As conceded by counsel for Father, the only order of the court for which Mother could have been held in contempt for violating was that she placed herself in a position of being unable to present minor child "A" to a Chattanooga psychiatrist for evaluation. A hearing on the show cause order was held in Chattanooga on June 3, 1985, with neither Mother nor her counsel in attendance. The trial court's order reflected that Mother received notice of the hearing. The trial court entered its order on June 10, 1985, changing custody from Mother to Father, noting that Mother "refused to abide the prior orders of this Court regarding the parties' minor children and having fled this jurisdiction without notice to the court or Defendant-Petitioner...."

In this state, a custody order that has become final is *res judicata* as to the parties and cannot be modified absent the showing of a change in material circumstances affecting the welfare of the children. *See Walker v. Walker*, 656 S.W.2d

11 (Tenn.App.1983); *Long v. Long,* 488 S.W.2d 729 (Tenn.App.1972). As of the date of the hearing, there were no amendments to Father's pleadings alleging changed circumstances or requesting a modification of prior custody orders. There is nothing in the trial court's order of June 10, 1985 reflecting that any proof was presented to show any changed circumstances that would materially affect the welfare of the children. Furthermore, taking the children to California in and of itself does not warrant a change in custody. "[I]n the situation where no injunction has been issued in the award of custody, the parent contesting the relocation should bear the burden of showing that the relocation is not in the best interests of the children." *Walker v. Walker,* 656 S.W.2d 11, 17–18 (Tenn.App.1983). In argument, counsel for Father conceded that there was no court order in existence restraining Mother and the children from leaving Tennessee or to require the court's consent prior to leaving the jurisdiction.

As an additional ground for declaring the order of June 10, 1985 to be voidable, we find that the proceedings which served as a basis for this order were not in accordance with the child custody and visitation statutes of this state.

The Uniform Child Custody Jurisdiction Act is codified in T.C.A. § 36–6–201 et seq. A "custody determination" is defined in T.C.A. § 36–6–202(2) as "a court decision and court orders and instructions providing for the custody of a child...." Section (4) of the statute defines "decree" or "custody decree" as "a custody determination contained in a judicial decree or order made in a custody proceeding and includes ... a modification decree."

After reviewing the record prior to the trial court's order of June 10, 1985 which changed custody from Mother to Father, it clearly appears that the Order to Show Cause entered by the trial court on May 21, 1985 was directed at Mother to "show cause ... why she should not be held in contempt of this Court and punished accordingly" for violating "prior orders of this Court." A subsequent order dated May 28, 1985 changed the date of the hearing to June 3, 1985 and provided for both orders to be served on Mother by registered mail in care of a school to which "A" had applied for admission in California.

At the hearing on June 3, 1985 neither Mother nor counsel was present. At the conclusion of the hearing, the trial court changed custody from Mother to Father. In essence, the trial court made a custody determination under the name of a contempt proceeding. This hearing was in violation of both T.C.A. §§ 36–6–205 and 36–6–206. As to the first code section, while Mother was given "notice," she was not given notice of a custody proceeding but only of a contempt proceeding. This notice was thus defective. Second, as Mother, who had physical custody of the children, was admittedly in California the notice to be given had to conform to T.C.A. § 36–6–206. This statute provides that no hearing in this state can be held any sooner than twenty days after the mailing of notice. The record reflects that no more than seven days elapsed between the date of the order regarding the notice and the date of the hearing. Therefore, without proper notice and in the absence of any proof pertaining to change of custody being presented, we declare the order of June 10, 1985 to be void.

The result of our decision in this case is that because the trial court's orders of June 10, 1985 and March 7, 1986 are declared void, they are held to be of no effect. Insofar as the question of the parties' right to custody is concerned, custody reverts back to Mother in accordance with the trial court's orders of July 25, 1984 and April 26, 1985.

By so ruling we are not making an award of custody. The juvenile court has obtained exclusive jurisdiction over the custody of the children, which occurred upon filing by TDHS of the petition to have the children declared dependent and neglected. As both the chancellor and the Court of Appeals did in *Marmino,* supra, we recognize that exclusive jurisdiction has been conferred upon the Juvenile Court of Ham-

**464**

ilton County. The circuit court should hold in abeyance any future rulings pertaining to custody of the minor children until the proceedings in the dependency-neglect case are finally disposed of.

The judgment of the trial court is reversed. This cause is remanded to the Circuit Court of Hamilton County, there to be held in abeyance pursuant to the provisions of this opinion. Costs in this cause are taxed to Father, for which execution may issue if necessary.

CRAWFORD and FARMER, JJ., concur.