## IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| **TERRI ANN ADAMS,** | ) | |
| | ) | Appeal No. |
| Plaintiff/Appellant, | ) | **M1999-02664-COA-R3-CV** |
| | ) | |
| vs. | ) | |
| | ) | Cheatham Chancery |
| **WILLIAM DAVID COOPER** | ) | No. 8485 |
| | ) | |
| Defendant/Appellee | ) | |

**FILED**

February 29, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

### APPEAL FROM THE CHANCERY COURT
### OF CHEATHAM COUNTY

### THE HONORABLE ROBERT E. BURCH PRESIDING

JENNIFER DAVIS ROBERTS
106 CENTER AVENUE
P.O. BOX 944
DICKSON, TENNESSEE 37055

ATTORNEY FOR PLAINTIFF/APPELLANT

ROBERT L. PERRY, Jr.
102 FREY STREET
P.O. BOX 82
ASHLAND CITY, TENNESSEE 37015

ATTORNEY FOR DEFENDANT/APPELLEE

### VACATED AND REMANDED

PATRICIA J. COTTRELL, JUDGE

CONCURS:
CANTRELL, P. J.

CONCURS IN SEPARATE OPINION:
KOCH, J.

# OPINION

This case involves a dispute over custody between parents who never married. In January 1997, the trial court herein awarded custody of the couple's two children to Terri Ann Adams ("Mother"), who was then living in Florida with the children. Mother, Father and the children had lived in Tennessee prior to the couple's separation and at the time of the initial requests for custody. Mother was awarded custody "so long as she obeys court ordered visitation." On one occasion, Mother did not obey court ordered visitation, and William David Cooper ("Father") filed a petition for contempt and for a change of custody in the Tennessee trial court which had made the original custody award. By the time of the hearing on the change of custody, Father had also moved from Tennessee. Nonetheless, the parties and the trial court proceeded with the contempt and change of custody hearing, after which the court changed custody from Mother to Father based solely on the one violation. Mother has appealed the change of custody. Because we find that Tennessee no longer had jurisdiction over the custody of these children, we vacate the trial court's order awarding custody to Father, thus reinstating the original award of custody to Mother which was entered with a proper jurisdictional foundation.

## I.

The parties lived together for five years but never married. They had two children, the first born in 1990 and the second born in 1993. The parties were living in Tennessee in November 1995 when Mother moved from the parties' home and she filed a petition for custody in the appropriate Tennessee trial court. Father filed an answer, seeking legitimation of the children and asking for physical custody. In February 1996, the Tennessee trial court legitimated the children, and by agreed order placed custody with Mother and set child support and visitation pending a final hearing.

At some point, Mother obtained an order of protection against Father.

Shortly after the temporary custody award, Mother reported that Father had violated the order of protection. While Father was in jail for the alleged violation in February 1996, Mother moved with the children to Florida. Father remained in Tennessee. In March of 1996, Father filed a petition for contempt on the basis that Mother's move destroyed his visitation with the children. He also requested that custody be awarded to him in the final order or that Mother be required to return the children to Tennessee for visitation. In April of 1996, Mother responded to Father's petition, stating she moved to Florida because of Father's violence and threats toward her.

A hearing was held in October 1996 on the issues of custody, support and visitation as well as on Father's petition for contempt. The court issued an order placing "temporary custody" with Mother in November 1996. In January 1997, the court issued a Memorandum Opinion and Order in which the court found that Father had been "violent toward [Mother] on several occasions" and that Mother was "bitter and vindictive" toward Father. Regarding the reason for Mother's move, her fear of Father, the court was unpersuaded by Mother's reasons and believed less drastic means than a move to Florida could have protected Mother. Consequently, the Court found Mother in contempt for moving the children to Florida and fined her $1,100, $50 for each weekend visitation Father missed with the children.[1] In addition, Mother was required to post a bond for transportation costs for the children so that they could visit Father.

On the issue of custody, the court placed custody with Mother, finding such award to be in the best interests of the children. The court attempted to condition the award on Mother's compliance with court ordered visitation, stating:

> Given the facts of this case, the Court is of the opinion that it would be in the best interests of the children that they be in the custody of their mother. In spite of Plaintiff's obvious disregard of the visitation orders of this Court, the facts establish that she

---

[1]Mother filed a timely Notice of Appeal of the contempt finding in February 1997, but never perfected the appeal.

has been the parent who has been primarily engaged in caring for the children. The sole factor against her is her move from the state for reasons which the Court does not accept as justified. . . . Custody of the minor children of the parties is awarded to Plaintiff so long as she obeys the orders of this Court with respect to visitation. . . . Plaintiff should be advised, however, that her award of custody is on "shaky ground" and that any action of hers in the future to frustrate visitation may result in her losing custody of these two children. The Court simply cannot discharge its duties to the children in this case if the custodial parent will not follow its orders. . . . The Plaintiff is admonished, however, that a reoccurrence of flouting the Court's orders **WILL** result in her incarceration. (emphasis in original).

Despite the court's stern warning, Mother did not send the children to Tennessee for their next visit, which was scheduled for their spring break in March of 1997. On May 2, 1997, Father filed a petition for contempt because of the missed visit and again asked for custody of the children. He also asked for a reduction in his child support obligation. On October 22, 1997, Mother filed a counterpetition for contempt against Father for his failure to pay child support. In that pleading, Mother also alleged that Father had moved to Illinois, making transportation of the children for visitation more difficult. Father answered Mother's counterpetition by alleging his income had decreased making him unable to pay his child support obligation. He admitted he had moved to Metropolis, Illinois.[2]

When the hearing on the contempt petitions was finally held in February 1998,[3] Father testified that he was unemployed after quitting his job. He had moved from Tennessee and was currently residing in Illinois. He had taken a lower paying job when he moved, but had been unemployed for the two months prior to the hearing. He admitted that he was in arrears in his child support obligation and that he had borrowed money from his mother to pay his own living expenses, but not to pay child support.

Father testified that when he called Mother prior to the spring break

---

[2]The date of Father's move is unclear. The record reflects that Father was still living in Tennessee in early 1997, but the petition filed by Mother in October of 1997 and the response thereto by Father clearly establish that Father had moved from Tennessee.

[3]No transcript of this hearing was filed, but a Statement of the Evidence, approved by the trial court, is included in the record. *See* Tenn. R. App. P. 24(c).

visitation in question, Mother told him that she could not afford to send the children to Tennessee and that she did not have to abide by the court's orders because those orders were on appeal. He also testified that his summer visitation with the children had taken place because he asked the court for some of the money on deposit to pay for transportation.

Mother stated that prior to the spring break she did not have the money to send the children to Tennessee and notified Father to that effect. It was her understanding that if she was unable to pay for transportation for visitation, the money held by the court could be used, but she did not know how to access that money. She further stated that it was her belief, based on an explanation provided by her attorney, that because of her appeal the proceedings were frozen.[4] She later discovered this information was incorrect, fired that attorney, and hired a new one.

Mother also testified that she brought the children to Father earlier than required for his visitation at Christmas. Father refused to return the children earlier, although Mother asserted they had agreed to this shifting of the visitation schedule. The result was that Father had the children longer at Christmas than was required by the court's order. Mother felt that this additional time made up for the missed spring break. Mother testified that she was strictly complying with the court's orders, except for the missed spring break, but that she could not afford transportation costs, particularly because Father was $3,508.71 in arrears in his child support.

In its order entered February 24, 1998, the trial court found Father in willful contempt of the court's previous order establishing child support and set his arrearage at $3,508.71, but did not impose sanctions for Father's contempt. The court further found Father to be voluntarily unemployed and, therefore, denied Father's requested reduction in child support.

With regard to the issue on appeal, the trial court changed custody to

---

[4]On cross-examination, when confronted with a tape recording of her telephone conversation with Father, Mother testified that, in fact, she had stated that she did not care what the judge said about visitation.

Father and ordered Mother to pay child support. In its order, the court reviewed its prior order awarding custody to Mother "so long as she obeys the orders of the Court with respect to visitation" and then stated:

> The Court specifically found that [Mother] has not done as ordered. The Court further specifically found that it is obvious that [Mother] will not voluntarily obey this Court. The Court found that it must either transfer custody or it must surrender total control of the parties' children to [Mother], which the Court finds would result in [Father's] visitation being denied or severely limited. **On this basis alone**, custody is awarded to [Father] effective immediately. (emphasis added).

The court awarded Mother visitation and ordered that Mother would bear the costs of transportation for visitation. Mother immediately filed a motion to reconsider or to alter, which the court denied seven and a half months later. Mother then appealed.

II.

Neither party raised, either before the trial court or in this appeal, the issue of the trial court's jurisdiction to modify the previous custody award, and the trial court did not address that issue. The record, however, reveals facts that raise serious questions of subject matter jurisdiction which this Court is obligated to consider in its review of the trial court's order changing custody. *See* Tenn. R. App. P. 13(b).

In order to adjudicate a claim, a court must have jurisdiction over both the parties and the subject matter. *See Landers v. Jones*, 872 S.W.2d 674, 675 (Tenn. 1994). Personal jurisdiction relates to the court's authority to adjudicate the claim as to the person and can be waived by the express or implied consent of a party. *See id.* In the case before us, both parties waived any claim of the court's lack of personal jurisdiction by appearing before the court to try the case on its merits.

Subject matter jurisdiction, however, cannot be waived by the parties and is always at issue. *See id; State ex rel. Dept. of Social Services v. Wright*, 736 S.W.2d 84, 85 n.2 (Tenn. 1987); Tenn. R. Civ. P. 12.08; Tenn. R. App. P. 13(b). Subject matter jurisdiction relates to the cause of action itself and is

conferred by the sovereign (here, the state legislature). *See id.* Jurisdiction over the modification of a custody award is subject matter jurisdiction. *See Gutzke v. Gutzke*, 908 S.W.2d 198, 201 (Tenn. Ct. App. 1995).

A trial court's authority to hear and determine matters of child custody is established by statute in Tennessee. At the time of the proceedings herein, the trial court's subject matter jurisdiction in such matters was governed by Tennessee's version of the Uniform Child Custody Jurisdiction Act (UCCJA), Tenn. Code Ann §§ 36-6-201 - 225 (1996) [repealed].[5] Under that statute, jurisdiction of a Tennessee court to make a child custody determination by modification decree depended upon one of two prerequisites: (1) this state was the child's "home state" at the time of, or within six months before, the commencement of the proceeding to modify custody, or (2) the child had no "home state" or the child's "home state" had declined to exercise jurisdiction on the basis that this state was the more appropriate forum.[6] *See* Tenn. Code Ann. § 36-6-203 (1996) [repealed].

Tennessee's version of the UCCJA, although it bears the name "Uniform" in its title, differed from the Uniform version in one important, and relevant herein, respect. *See Brown v. Brown*, 847 S.W.2d 496, 500 (Tenn. 1993). In adopting a modified version of the "Uniform" act, Tennessee chose to limit jurisdiction in child custody matters to a single state, the child's "home state" if the child had one. *See* Tenn. Code Ann. § 36-6-203(a)(1) 1996 [repealed]; *Brown*; 847 S.W.2d at 500. "Under this scheme, jurisdiction exists in only one state at a time." *Id.*

Thus, for our purposes in determining whether the trial court herein had jurisdiction to modify custody, the initial inquiry is whether Tennessee was the children's "home state" at the requisite time. The UCCJA defined "home state," in pertinent part, as "the state in which the child immediately preceding

---

[5]Tennessee adopted the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), effective June 14, 1999, replacing the earlier UCCJA.

[6]Additional criteria must be present even if the threshold requirements of the second prerequisite are met. *See* Tenn. Code Ann. §36-6-203(a)(2)(A) (1996).

the time involved lived with such child's parents, a parent, or a person acting as parent, for at least six (6) consecutive months..." Tenn. Code Ann. § 36-6-202(5) (1996) [repealed].

> [T]he courts of this state have jurisdiction to make or modify a child custody order if Tennessee is "the home state of the child at the commencement of the proceeding" or was the child's home state "within six (6) months before commencement of the proceeding" and the child has been taken outside Tennessee by a person claiming custody, leaving one parent (or "a person acting as parent") in Tennessee. Tenn. Code Ann. § 36-6-203(a)(1)(B). In other words, if Tennessee has been the child's "home state" and the child is now in another jurisdiction, Tennessee continues to be the child's home state for an additional period of six months following removal, at which point the other state becomes the child's "home state," based on the child's presence there for a period of six consecutive months.

*Brown*, 847 S.W.2d at 500.

The filing of the petition to modify custody would be considered "the commencement of the proceedings" for purposes of determining the jurisdiction of the trial court to modify custody in the order before us on appeal. *See Brown,* 847 S.W.2d at 507; *Marcus v. Marcus*, 993 S.W.2d 596, 600 (Tenn. 1999). Father filed the petition for contempt and to modify custody on May 2, 1997. The record herein establishes that Mother and the two children moved to Florida in February of 1996 and remained there. Therefore, Tennessee was not the children's "home state" and had not been the children's "home state" for over a year, at the commencement of the proceedings to change custody.

In very limited and specific circumstances, Tennessee courts had jurisdiction in child custody matters under the Tennessee version of the UCCJA even where Tennessee was not the "home state." "If Tennessee is *not* the child's 'home state,' a Tennessee court may assume jurisdiction only upon a finding that no other state qualifies as the child's 'home state,' or that the 'home state' has declined to exercise jurisdiction and deferred to Tennessee as 'the more appropriate forum to determine the custody of the child.' " *Brown*, 847 S.W.2d at 500. The trial court herein made neither requisite finding. The record demonstrates that Florida had become the children's "home state" six

months after Mother's move there and was the "home state" at the time of the commencement of the proceedings to modify custody. The record contains no indication that a Florida court had deferred to Tennessee or that any action had been filed in a Florida court.

Thus, a basis for the trial court's jurisdiction cannot be found in Tenn. Code Ann. §36-6-203(a) (1996) [repealed]. *See Brown*, 847 S.W.2d at 507.

Similarly, federal law does not provide a basis for jurisdiction in this case. The Parental Kidnaping Prevention Act (PKPA), 28 U.S.C.A. § 1738A (West 1994),[7] in effect in during the proceedings herein, provides for continuing jurisdiction in some circumstances. Under the PKPA, a state rendering an initial custody award may maintain jurisdiction to modify that award so long as that state continues to have jurisdiction over the matter *and* remains the residence of the child or of any contestant.[8] *See* 28 U.S.C.A. § 1738A(d). The first prong of the requirement is stated: "A child custody determination made by a court of a State is consistent with the provisions of this section only if (1) such court has jurisdiction under the law of such state." 28 U.S.C.A. § 1738A(c). Because the PKPA incorporates the issuing state's jurisdictional requirements, the federal statute does not provide a basis for subject matter jurisdiction herein because no such jurisdiction existed under Tennessee law.[9]

### III.

Nor did the trial court's use of the phrase "so long as" in its initial

---

[7]Congress amended the Act in November 1998, but the amendments would not have altered the result in the case before us.

[8]Even if jurisdiction had continued under the first prong of the PKPA, it would likely have been lost under the second because, when the court changed custody in February 1998, neither the children nor any contestant continued to reside in Tennessee. "*State ex rel. Cooper v. Hamilton*, 688 S.W.2d 821 (Tenn. 1985) is the authority for the conclusion that where all persons involved have moved away, jurisdiction to modify custodial decrees will shift elsewhere." *Marcus*, 993 S.W.2d at 599.

[9]Tennessee adopted the Uniform Child Custody Enforcement Act (UCCJEA), effective June 14, 1999. One difference between the UCCJA and the UCCJEA is the UCCJEA's continuing jurisdiction provision, Tenn. Code Ann. §36-3-217 (Supp. 1999). That provision would maintain modification jurisdiction in the court making the initial custody determination until neither the child nor one parent has a significant connection with Tennessee or until a court determines that neither the child nor either parent is presently residing in Tennessee.

custody determination confer on it continuing jurisdiction to modify that determination. The trial court issued its initial custody Memorandum Opinion and Order in January 1997, after Mother's move to Florida for which the court found her in contempt, and found that the best interests of the children were served by being in the custody of their Mother. The court also stated that custody was awarded to Mother "so long as she obeys the orders of this Court with respect to visitation." Father argues (regarding the merits, not the jurisdictional issue) that this January 1997 award of custody to Mother was "conditional," such that her violation of the visitation order triggered the change of custody to Father. The trial court appears to have shared that view as evidenced by the court's statement that the change of custody was based solely on Mother's failure to obey the court's visitation order. Further, the only evidence produced at the hearing concerned Mother's compliance with the court's visitation order and Father's compliance with the court's child support order, which evidence is relevant to the contempt issues before the court. However, a change of custody inquiry would require evidence about additional facts and circumstances. *See Arnold v. Gouvitsa*, 735 S.W.2d 458, 462-63 (Tenn. Ct. App. 1987).

In making an initial custody decision, a trial court must attempt to set custody arrangements that "promote the best interest of the child, enhance the child's relationship with each parent, and interfere as little as possible with post-divorce family decision-making." *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 484 (Tenn. Ct. App. 1997). Once that decision has been made and has become final, the award of custody is *res judicata* "upon the facts in existence or reasonably foreseeable when the decision was made." *Adelsperger*, 970 S.W.2d at 485. Having been awarded, custody should not be disturbed unless there is some change in circumstances that affects the welfare of the child. *See id.* If the court finds that a material change of circumstances has occurred, then the court will proceed to determine if the best interests of the child dictate a change in the existing custody arrangement

10

and to devise a custody arrangement that serves those interests. *See Adelsperger*, 970 S.W.2d at 485. "In child custody matters the paramount concern of the Court is the welfare of the children and the rights of the parties will yield to that concern." *Dantzler v. Dantzler*, 665 S.W.2d 385, 387 (Tenn. Ct. App. 1983); *see also Contreras v. Ward*, 831 S.W.2d 288, 289 (Tenn. Ct. App. 1991).

Underpinning the requirement that a change of circumstances must be found before a court can consider changing an award of custody is the child's "ongoing need for continuity and stability," which this court has consistently recognized. *See Smithson v. Eatherly*, No. 01A01-9806-CV-00314, 1999 WL 548586 at *3 (Tenn. Ct. App. July 29, 1999) (no Tenn. R. App. P. 11 application filed) (citing *Adelsperger*, 970 S.W.2d at 485; *Hill v. Robbins*, 859 S.W.2d 355, 358-59 (Tenn. Ct. App. 1993); *Contreras v. Ward*, 831 S.W.2d at 290). Because of this need for stability, our child custody decisions have created a presumption in favor of the original custody award. *See Smithson*, 1999 WL 548586 at *3 (citing *Taylor v. Taylor*, 849 S.W.2d 319, 332 (Tenn. 1993)). Consistent with that presumption, temporary awards of custody are generally disfavored, and should be made only if necessary, when the court needs additional information before making a permanent decision or where the health, safety, or welfare of the child or children is imperiled. *See King v. King*, No. 01A01-91-10PB00370, 1992 WL 301303 at *2 (Tenn. Ct. App. Oct. 23, 1992) (no Tenn. R. App. P. 11 application filed). Child custody decisions should be made "with as much finality as the circumstances permit." *King*, 1992 WL 301303 at *2 (citing *Hilliard v. Hilliard*, 254 S.E.2d 372, 373 (Ga. 1979)).

It is impossible to reconcile these principles with recognition of a "conditional" award that can be modified upon violation of the condition, without consideration of the "change of circumstances" and "best interest"

analysis requirements.[10]  In *Kyker v. Kyker*, No. 03A01-9509-CV-00324, 1996 WL 67178 (Tenn. Ct. App. Feb. 16, 1996) (no Tenn. R. App. P. 11 application filed), the trial court changed custody from the mother to the father solely on the basis of the court's finding that the mother had violated an earlier order that she not cohabit with a specifically named man.  This court found that the evidence preponderated against the trial court's finding of a one-time violation of that order, but made it clear its ruling would have been the same even if a violation had occurred.  This court agreed with the mother's assertion, "[E]ven if the evidence does not preponderate against the court's findings, [the trial court] was in error in changing the custody as a punishment to her since the proof fails to show it was in the best interest of the child for her custody to be changed." *Kyker*, 1996 WL 67178 at * 2.

We do not believe that a court's use of "so long as" or similar "conditional" language converts a final custody award into an order which the court can modify without consideration of all the factors required by case law and statute.  *See* Tenn. Code Ann. § 36-6-101(Supp.1999).  Nor does it create an award over which the trial court continues to maintain jurisdiction absent any other jurisdictional basis.

Similarly, neither Father's petition for contempt nor Mother's later petition for contempt conferred upon the trial court continuing jurisdiction to modify its previous custody award.  The specific statutory requirements for subject matter jurisdiction to modify a custody determination cannot be disregarded even where a court may have jurisdiction over other matters.

---

[10]Courts can and do place restrictions on custody and visitation. *See Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988) (suspending visitation "until a change of circumstance can be shown" because of the father's incarceration and violence toward the son and other family members); *D. v. K.*, 917 S.W.2d 682, 685 (Tenn. Ct. App. 1995) (requiring visitation to be supervised after the father allowed five year old twins to play unsupervised in a motel parking lot 100 yards from the interstate ramp for five hours); *Burrell v. Burrell*, No. 03A01-9809-CV-00291, 1999 WL 172670 at *4 (Tenn. Ct. App. Mar. 24, 1999) (no Tenn. R. App. P. 11 application filed) (upholding restriction on children being in presence of custodial father's girlfriend pending an appropriate investigation).  The conditions imposed in these cases, however, deal with the best interest of the child, rather than the enforcement of the court's order. Fostering a child's relationship with the noncustodial parent is, of course, generally in the child's best interest, but a single violation of a visitation order does not constitute automatic grounds for change of custody obviating the need to consider other factors relevant to the child's interest.

While we recognize that "the inherent power of courts to punish contemptuous conduct has long been regarded as essential to the protection and existence of the courts," *Black v. Blount*, 938 S.W.2d 394, 397 (Tenn. 1996), that power to punish "the willful disobedience or resistance of any [party] to any lawful [order] of said courts," Tenn. Code Ann. § 29-9-102 (Supp. 1999), does not include removal of custody as an available punishment. Thus, even if the trial court herein retained jurisdiction over the contempt petitions,[11] the punishment for such contempt may be by fine or by imprisonment, or both. *See* Tenn. Code Ann. § 29-9-103 (Supp. 1999). Removal of custody is not an available sanction for contempt. *See id.*

While a parent's misconduct may provide some evidence of his or her fitness to have custody,[12] a custody decision is not, and cannot be, used to punish the parent. It is well established that an award of custody is to be made to assure the best interests of the children and not to reward or punish a parent.

---

[11]Our supreme court has observed that a court which loses jurisdiction to modify custody "seemingly" retains jurisdiction to enforce its unmodified custody order through contempt. *See Marcus v. Marcus*, 993 S.W.2d at 603 n. 13. We note that while courts in several states agree with the conclusion implied in that observation, other courts have reached different conclusions. *Compare Brighty v. Brighty*, 883 S.W.2d 494 (Ky. 1994) (UCCJA explicitly applies to child custody determinations, and a contempt order is not a custody determination); *Kirylik v. Kirylik*, 292 S.C. 475, 357 S.E.2d 449, 450 (1987) ("even if a court loses jurisdiction to modify its prior orders under the UCCJA, it retains the inherent power to enforce compliance with them through civil contempt"); *Taylor v. Taylor*, 332 Pa. Super. 67, 480 A.2d 1188 (Pa. Super. Ct. 1984) (same); *Rapp v. Russell*, 965 S.W.2d 897 (Mo. Ct. App. 1998) (same) *with Funk v. Macauley*, 457 N.E.2d 223 (Ind. Ct. App. 1983) (UCCJA governed any jurisdictional issue when a contempt proceeding was "inextricably interwoven" with matters of custody and visitation); *Snisky v. Whisenhunt*, 44 Ark. App. 13, 864 S.W.2d 875 (Ark. Ct. App. 1993). (Arkansas court was asked to enforce portion of order which did not involve questions of "custody determination," thus UCCJA was not applicable). Thus, the nature of the relief sought and its relationship to a "custody determination" are issues to be examined by courts in determining whether inherent enforcement jurisdiction or the UCCJA's modification jurisdiction applies in a specific situation. We believe both judicial economy and the policies underlying the UCCJA would best be served by domestication of the initial custody order in the new home state for purposes of enforcement as well as modification, thereby also avoiding personal jurisdiction problems. In this case, however, we need not determine whether the court retained jurisdiction to enforce its prior order by contempt since the court imposed no sanction for contempt and, as discussed above, was not authorized to change custody as a punishment for contempt or without evidence to show changed circumstances and an analysis of the children's best interests. *See Arnold v. Gouvitsa*, 735 S.W.2d at 463 ("trial court made a custody decision under the name of a contempt proceeding").

[12]Both the courts and the legislature have recognized the importance of enabling the child to maintain a relationship with the noncustodial parent. *See Wilson v. Wilson*, 987 S.W.2d 555, 564 (Tenn. Ct. App. 1999); Tenn. Code Ann. § 36-6-106(10) (Supp. 1999). A custodial parent's consistent efforts to thwart a close and continuing relationship between the child and the non-custodial parent through failure to provide visitation could constitute a material change in circumstances since the original order foresaw such visitation. Evidence of such efforts by the custodial parent would also be relevant in a best interests and comparative fitness analysis.

*See Adelsperger*, 970 S.W.2d at 485 (neither the mother's move to Mississippi nor her motivation for moving provided grounds for changing custody to the father); *Barnhill v. Barnhill*, 826 S.W.2d 443, 453 (Tenn. Ct. App. 1991) (custody was awarded to the father, not to punish the mother for her relationship with another man, but because the father was comparatively more fit); *Long v. Long*, 488 S.W.2d 729, 733 (reversing the trial court's change of custody to the father which was based on the mother's boyfriend visiting until late hours); *see also Williams v. Williams*, 263 SW2d 531, 532 (Tenn. 1953) (although father was in contempt, best interests of child are paramount).

We agree that a court must be able to enforce its own orders, but modification of custody is not an available sanction for contempt. Thus, whether or not the trial court retained subject matter jurisdiction to consider the contempt petitions before it, it no longer had subject matter jurisdiction to modify the existing custody order.

V.

Because the trial court had no jurisdiction to modify the award of custody, we must vacate the trial court's order awarding custody to Father. The original award of custody to Mother is reinstated, along with the visitation and child support orders. *See Arnold v. Gouvitsa*, 735 S.W.2d at 463. Costs are taxed to Appellee for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE

CONCURS:

_____
BEN H. CANTRELL,
PRESIDING JUDGE, M. S.

CONCURS IN SEPARATE OPINION:

WILLIAM C. KOCH, JR., JUDGE