## IN THE SUPREME COURT OF TENNESSEE
### AT JACKSON

FOR PUBLICATION

|  |  |  |
|---|---|---|
| LORRAINE BURTON SPIERS MARCUS, | ) | **Filed: May 24, 1999** |
|  | ) |  |
| Plaintiff/Appellee, | ) | SHELBY COUNTY |
|  | ) |  |
| v. | ) | Hon. Floyd Peete |
|  | ) | Chancellor |
| TRENT WRIGHT MARCUS, | ) |  |
|  | ) | Supreme Court |
| Defendant/Appellant. | ) | No. 02S01-9804-CH-00036 |

FOR APPELLANT
Daniel Loyd Taylor
Craig B. Flood, II
Memphis, TN

FOR APPELLEE
Caren B. Nichol
Memphis, TN

# O P I N I O N

COURT OF APPEALS REVERSED,
TRIAL COURT JUDGMENT REINSTATED.

DROWOTA, J.

In this case, we consider whether the Chancery Court of Shelby County abused its discretion in declining jurisdiction of a suit for the modification of child custody. Apparently finding that the plaintiff was barred from filing suit in Tennessee due to her violation of previous child custody orders entered in North Carolina, the trial court dismissed the plaintiff's complaint. The Court of Appeals reversed. Because we find that the trial court acted within its discretion as set forth in Tenn. Code Ann. § 36-6-209(b) (1996), we reverse the Court of Appeals and reinstate the trial court's order dismissing the plaintiff's complaint.

## PROCEDURAL HISTORY

Plaintiff/Appellee Lorraine Burton Spiers Marcus ("the Wife") and Defendant/Appellant Trent Wright Marcus ("the Husband") were married in Memphis in 1990. Shortly thereafter, the parties moved to Winston-Salem, North Carolina, where the Husband was attending medical school. The parties' only child, Natalie Spiers Marcus, was born in November of 1991. The parties separated in the Fall of 1992.

In response to a petition filed by the Husband seeking custody of the child and a counterpetition filed by the Wife seeking custody, child support, and alimony, a North Carolina court entered an order on March 16, 1993. In this order, the North Carolina court found:

> That both the [Husband] and the [Wife] are fit and proper parents to have the joint legal care, custody, and control of the minor child. That it would be in the best interests of the minor child that her primary physical care, custody, and control be awarded to the [Wife] subject to secondary physical custody with the [Husband] as set out herein.

-2-

The court set forth a visitation schedule and awarded alimony and child support to the Wife.

Around January of 1993, shortly before this North Carolina order was entered, the Wife and the child relocated to Memphis.[1]  In July of 1993, the Husband moved to Arkansas, where he filed a suit for divorce, division of property, and a finding that neither party was entitled to alimony.  An Arkansas court granted the Wife's motion to dismiss all of the Husband's requests for relief except for divorce.  The Arkansas court scheduled a hearing on the complaint for divorce in December of 1994.

While these proceedings were occurring in Arkansas, the Husband also filed a petition in North Carolina to alter the March 1993 order.  Following a hearing on this motion in which both parties were represented by counsel, the North Carolina court, on September 30, 1993, entered an order setting forth a more specific visitation schedule.  The order stated that all other aspects of the March 1993 order would remain in effect and that "this cause is retained for further orders of this Court."

In response to a show cause motion filed by the Husband, the North Carolina court, on November 22, 1994, entered an order finding that the Wife was in civil and criminal contempt for failure to adhere to the visitation schedule set forth in the September 1993 order.  The North Carolina court ordered that the Wife be

_____

[1]This relocation was acknowledged by the North Carolina court in its March 1993 order:

> That the [Wife] has testified and indicated that she is in the process of moving to Memphis, Tennessee along with the minor child . . . , and that the reason for her relocation to Memphis, Tennessee is so that she can secure employment, since the employment conditions are more favorable in Memphis, Tennessee, than in Winston-Salem, North Carolina.

incarcerated until she complied and that she pay for the Husband's attorney's fees. Although the Wife was not present during this hearing, she was represented by counsel. Interestingly, another order was also entered by a different North Carolina judge on the same date, November 22, 1994. The order stated that it was in response to the Husband's "Motion for Review, requesting, among other things, modification of [the Husband's] secondary physical custody and termination of [the Wife's] alimony." The order further stated that the Wife "appeared in Court represented by her attorneys." This order made no reference to the contempt order or any allegation that the Wife had failed to comply with the visitation schedule. The North Carolina court simply reaffirmed the existing joint custody arrangement, increased the Husband's alimony and child support obligation, and directed that he pay the Wife's attorney's fees. The order noted that although both parties were living out-of-state, they were residents of North Carolina six months prior to the filing of the action.

The record includes an additional contempt order entered by the North Carolina court on December 16, 1994. Although the Wife was not present, she was represented by counsel at the hearing. Asserting that it retained jurisdiction over the matter, the North Carolina court found that the Wife had "willfully and intentionally violated" the September 30, 1993 order relating to the visitation schedule and the November 22, 1994 contempt order. The court again found the Wife to be in civil and criminal contempt, ordered that she be incarcerated, and directed that she pay the Husband's attorney's fees.

A few days later, on December 21, 1994, the Arkansas court held a hearing regarding the Husband's petition for divorce. After finding that the Husband was a resident of Arkansas and, thus, that the court had jurisdiction, the court granted the Husband a divorce "on the ground of general indignities," but refused to make a ruling "on any other matter." This order was entered January 11, 1995.

Meanwhile, on December 19, 1994, the Wife filed a complaint for divorce and injunctive relief in the Chancery Court of Shelby County, Tennessee. The complaint sought a divorce, a division of property, an award of child support and alimony, and a finding that the Wife was entitled to custody of Natalie.[2] The Wife's complaint includes the following statement:

> Plaintiff is aware of, and calls this court's attention to, a custody order which was entered on March 16, 1993, by the General Court of Justice, District Court Division, Forsyth County, North Carolina, Docket number 92 CVD 6246. The Order awarded legal custody of the parties' minor child jointly to the Plaintiff and Defendant. It further awarded primary physical care, custody and control of the minor child to Plaintiff and secondary physical custody to the Defendant. No divorce action is pending in North Carolina.

> Plaintiff avers that the North Carolina Court has continued to exercise jurisdiction over the custody issue although it does not have the authority to do so. Plaintiff further avers that pursuant to Tennessee Code Annotated section 36-6-207(a) and the Federal Parental Kidnapping Prevention Act, U.S.C. 1738A, the North Carolina Court is not "exercising jurisdiction substantially in conformity with this part" in that (1) neither of the parties is a domiciliary of the state of North Carolina, (2) neither party continues to reside in North Carolina, as the Plaintiff left the state on December 30, 1992 and the Defendant left the state on July 1, 1993, and (3) Tennessee is the "home state" of the parties' child.

---

[2]The complaint also sought to enjoin the Husband from permitting members of the opposite sex from staying overnight with him when the child was present.

On April 18, 1995, the Wife filed in the Chancery Court a "Petition to Enroll and Modify Foreign Decrees and for Injunctive Relief." Attached as exhibits to the petition were the North Carolina court orders dated March 16, 1993, September 30, 1993, and November 22, 1994,[3] as well as the Arkansas court orders dated November 10, 1993 and January 11, 1995. The petition alleged that these five orders "are entitled to full faith and credit in the courts of the State of Tennessee." The petition further alleged that a material change of circumstances had occurred since the entry of these out-of-state orders so as to warrant the Wife being awarded sole custody of the child.

In response to a motion to dismiss filed by the Husband, the Chancery Court of Shelby County held a hearing on this matter on August 31, 1995. At the hearing, counsel for the Husband cited the contempt orders entered by the North Carolina court and contended that the Shelby County trial court should refuse to exercise jurisdiction due to the Wife's "unclean hands." The Wife responded that the contempt orders were void because North Carolina did not have jurisdiction over the out-of-state parties. On November 14, 1995, the Chancery Court of Shelby County granted the Husband's motion to dismiss in a non-specific order. Subsequently, the Wife filed a motion to alter or amend, which was denied by the trial court.

While this action was being appealed to the Tennessee Court of Appeals, another order was entered by the North Carolina court on January 9, 1997 pursuant

---

[3]The petition only references the November 22, 1994 order increasing the Husband's alimony and child support obligations and not the November 22, 1994 order finding the Wife to be in contempt.

to a change of custody motion filed by the Husband.[4]  Prior to a hearing on the

matter, the court granted a motion to withdraw filed by counsel for the Wife and

signed by the Wife.  The Wife did not appear at the hearing on this motion and, thus,

neither the Wife nor her counsel were present.  The order refers to the litigation

history as well as the Chancery Court of Shelby County's action "deferring this matter

to the North Carolina Court which has retained jurisdiction over the parties' minor

child, Natalie."  Finding that a "substantial and material change of circumstances

justifying a modification" of the North Carolina court's previous orders exists, the

North Carolina court awarded custody of the child to the Husband.[5]  The court also

ordered that the Husband's child support obligations should be stayed.  Despite

insisting that the North Carolina court's actions were void, the Wife agreed to turn

over physical custody of the child to the Husband.[6]

On July 1, 1997, the Tennessee Court of Appeals reversed the Chancery

Court of Shelby County's dismissal of the Wife's complaint.  Despite labeling the

Wife's defiance of the North Carolina orders as "clearly reprehensible," the Court of

Appeals found as follows:

> But she cannot now be repelled because of the offense she offered to
> the North Carolina Court, see, Haynes v. Haynes, 904 S.W.2d 118

---

[4]The Husband filed a copy of this order as part of a motion for consideration of post-judgment facts, which we grant.

[5]Among reasons articulated by the court include the finding that "the [Wife] has demonstrated a pattern of violations of the decrees of this Court adversely affecting the relationship between the minor child and her father.  Specifically, the [Wife] has denied access of the minor child to the [Husband] and of the [Husband] to the minor child on approximately half of the [Husband's] scheduled visits."

[6]The Wife also filed a motion for consideration of post-judgment facts in which she states that an August 27, 1997 North Carolina order exists requiring the Wife to have supervised visitation with Natalie.  Although a copy of this alleged order is not attached, the Husband does not dispute its existence.

(Tenn. Ct. App. 1995), since our primary concern is for the best interests of the child. It is at this juncture that we emphasize that the child and Wife have been residents of Tennessee since January 1993, and Husband a resident of Arkansas since July, 1993. North Carolina has no vested jurisdictional interest, and neither Wife nor Husband nor the child has a 'significant connection' with that State. N.C. Gen. Stat. 50 A-3(2) (1989). Moreover, the custody of the child is not an issue before us; rather, whether or not the North Carolina Orders may be filed in Tennessee is the sole issue. State ex rel. Cooper v. Hamilton, 688 S.W.2d 821 (Tenn.1985) is the authority for the conclusion that where all persons involved have moved away, jurisdiction to modify custodial decrees will shift elsewhere.

Given the record before us we are not aware of any reason why the North Carolina Orders are not entitled to full faith and credit in Tennessee, T.C.A. 36-6-214; Brown v. Brown, 847 S.W.2d 496 (Tenn. 1993), and thus eligible for filing in the Chancery Court of Shelby County, Tennessee pursuant to T.C.A. 36-6-216.

The sole purpose of this legal exercise by the Wife appears to be an effort to salvage the issue of permanent alimony, since the divorce judgment rendered by the Arkansas Court has become final, and the issue of custody may be litigated in the child's home state in accordance with the laws of Tennessee. As to the efficacy of this stratagem we express no opinion and offer no critique. Suffice to state that a judgment which cannot be enforced is worthless, and that the North Carolina judgments, when filed in Tennessee at the behest of Wife are amenable to enforcement ab initio.

## DISCUSSION

On appeal, the Husband contends that the Chancery Court of Shelby County acted within its discretion in dismissing the Wife's complaint. Adopted by the General Assembly in 1979, Tennessee's version of the Uniform Child Custody Jurisdictional Act ("UCCJA"), Tenn. Code Ann. §§ 36-6-201 et seq. (1996 & Supp. 1998), when construed in conjunction with the federal Parental Kidnapping Prevention Act ("PKPA"), 28 U.S.C.A. §§ 1738A et seq. (1994 & Supp. 1999), is designed to avoid

-8-

jurisdictional controversies between other states when considering child custody disputes. See Tenn. Code Ann. § 36-6-201(a) (1996).[7]

Under Tennessee's version of the UCCJA, a trial court may exercise jurisdiction to enforce an initial child custody decree or modify an existing child custody decree in the event that Tennessee "is the home state of the child at the time of commencement of the proceeding." Tenn. Code Ann. § 36-6-203(a)(1)(A) (1996). There is little dispute that at the time the order was entered by the Chancery Court of Shelby County in November of 1995, Tennessee was the child's "home state," as defined by Tenn. Code Ann. § 36-6-202(5) (1996).[8] The UCCJA, however, also provides that a trial court that would otherwise retain jurisdiction under Tenn. Code Ann. § 36-6-203 may, nevertheless, decline jurisdiction under certain circumstances. Thus, Tenn. Code Ann. § 36-6-209 (1996), provides as follows:

> (a) If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct, the court may decline to exercise jurisdiction if this is just and proper under the circumstances.
>
> (b) Unless required in the interest of the child and subject to § 36-6-215(a), the court shall not exercise its jurisdiction to modify a custody decree of another state if the petitioner, without consent of the person entitled to custody, has improperly removed the child from the physical custody of the person entitled to custody or has improperly retained the child after a visit or other temporary relinquishment of

---

[7]For a thorough discussion of the objective of the UCCJA and its interplay with the PKPA, see Brown v. Brown, 847 S.W.2d 496, 498-503 (Tenn. 1993); Kimberly H. Harris, Note, Interstate Child Custody Disputes: A Practical Guide for Tennessee Attorneys on the Law of Jurisdiction, 24 Mem. St. U. L. Rev. 533 (1994).

[8]"Home state" is defined as "the state in which the child immediately preceding the time involved lived with such child's parents, a parent or a person acting as parent, for at least six (6) consecutive months, and in the case of a child less than six (6) months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six (6) months or other period." Tenn. Code Ann. § 36-6-202(5).

physical custody. If the petitioner has violated any other provision of a custody decree of another state, the court, subject to § 36-6-215(a), may decline to exercise its jurisdiction if this is just and proper under the circumstances.

With the exception of the analytical framework in the first sentence of subsection (b), the statutory language is permissive. It provides that a trial court "may decline" to exercise its jurisdiction if "just and proper under the circumstances." Id. (emphasis added). The trial court is authorized to determine what is the "just and proper" course in the consideration of the totality of the circumstances, and the appropriate standard of review for an appellate court of a trial court's declination of jurisdiction is whether the trial court abused its discretion. See Falco Adkins v. Falco Antapara, 850 S.W.2d 148, 153 (Tenn. App. 1992). Under this standard, "[a]n appellate court should not reverse for 'abuse of discretion' a discretionary judgment of a trial court unless it affirmatively appears that the trial court's decision was against logic or reasoning, and caused an injustice or injury to the party complaining." Ballard v. Herzke, 924 S.W.2d 652, 661 (Tenn. 1996); see also Myint v. Allstate Ins. Co., 970 S.W.2d 920, 927 (Tenn. 1998); Douglas v. Estate of Robertson, 876 S.W.2d 95, 97 (Tenn.1994).

The Husband contends that the Court of Appeals erred in finding an abuse of discretion and argues that the trial court acted within its discretion in declining jurisdiction due to the Wife's "unclean hands." Emphasizing that North Carolina has repeatedly held the Wife in contempt for violating custody orders, the Husband argues that the UCCJA authorized the trial court to decline jurisdiction because: (1) the Wife has "engaged in similar reprehensible conduct," Tenn. Code Ann. § 36-6-

209(a); and (2) the Wife "has violated any other provision of a custody decree of another state," Tenn. Code Ann. § 36-6-209(b). The Wife responds that the North Carolina contempt orders cited by the Husband found her in contempt of void orders and, thus, her violation of void orders does not constitute "reprehensible conduct" or a "violat[ion] . . . of a custody decree of another state," in accordance with Tenn. Code Ann. § 36-6-209.

We initially note that the Husband's reliance on Tenn. Code Ann. § 36-6-209(a) is misplaced. This provision involves petitions for an "initial decree" of child custody. Id. (emphasis added); see also Tenn. Code Ann. § 36-6-202(6). Because it is uncontroverted that North Carolina entered an "initial decree" in March of 1993, Tenn. Code Ann. § 36-6-209(a) is inapplicable. Since the Wife's complaint in the present case seeks to modify an out-of-state decree, our analysis must proceed under Tenn. Code Ann. § 36-6-209(b).

Clearly on its face, the record indicates that the Wife has violated an out-of-state custody decree. Tenn. Code Ann. § 36-6-209(b). One of the North Carolina contempt orders dated November 22, 1994 finds the Wife to be in contempt of the September 1993 North Carolina order. In addition, the December 1994 North Carolina order found the Wife to be in contempt of the September 1993 order as well as the November 22, 1994 contempt order. The Wife was represented by counsel at these contempt proceedings. During oral argument before this Court, however, counsel for the Wife argued that these orders were void because, under the terms

of the PKPA, the North Carolina court did not have subject matter jurisdiction at the times the orders subsequent to the March 1993 order were entered.[9]

The Husband responds that the Wife is judicially estopped from contending that the North Carolina orders are void because she attempted to "enroll" two of these orders in her April 18, 1995 "Petition to Enroll and Modify Foreign Decrees and for Injunctive Relief" filed in the Chancery Court of Shelby County.[10]  This petition, sworn to under oath by the Wife, referenced the North Carolina orders dated March 16,

---

[9]The Wife cites 28 U.S.C.A. § 1738A(d) (Supp. 1999), which provides that "[t]he jurisdiction of a court of a State which has made a child custody or visitation determination consistently with the provisions of this section continues as long as [such State continues to have jurisdiction under the laws of that State] . . . and such State remains the residence of the child or any contestant." North Carolina's version of the UCCJA provides that North Carolina retains jurisdiction over child custody so long as:

> (1) This State (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this State because of the child's removal or retention by a person claiming the child's custody or for other reasons, and a parent or person acting as parent continues to live in this State; or
> (2) It is in the best interest of the child that a court of this State assume jurisdiction because (i) the child and the child's parents, or the child and at least one contestant, have a significant connection with this State, and (ii) there is available in this State substantial evidence relevant to the child's present or future care, protection, training, and personal relationships; or
> (3) The child is physically present in this State and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
> (4) (i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this State is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.

N.C. Gen. Stat. § 50A-3 (1989).

[10]In the course of his rebuttal argument during oral argument before this Court, the Husband also asserted that the Wife may not argue this contention because she did not assert the voidness argument in her brief.  Although the Wife drafted her brief pro se, during oral argument she was represented by counsel, who conceded that the Wife did not completely and coherently articulate this argument in her brief. While it is true that issues not included in a party's brief may not be considered on appeal, Tenn. R. App. P. 13(b); Fite v. State, Bd. of Paroles, 925 S.W.2d 543, 545 (Tenn. App. 1996), we construe the Wife's brief to sufficiently allege this argument.  We further note that this argument has been consistently made by the Wife during the course of this litigation.

1993, September 30, 1993, and November 22, 1994,[11] as well as two Arkansas orders, and sought the "enforcement" of such orders in the Chancery Court of Shelby County.  We agree that judicial estoppel applies in this case.

Under the doctrine of judicial estoppel "a party will not be permitted to occupy inconsistent positions or to take a position in regard to a matter which is directly contrary to, or inconsistent with, one previously assumed by him, at least where he had, or was chargeable with, full knowledge of the facts, and another will be prejudiced by this action." Obion County v. McKinnis, 364 S.W.2d 356, 357 (Tenn. 1962); see also Layhew v. Dixon, 527 S.W.2d 739, 741 (Tenn. 1975); Werne v. Sanderson, 954 S.W.2d 742, 745 (Tenn. App. 1997).  Designed to prevent a party from "gaining an unfair advantage," Carvell v. Bottoms, 900 S.W.2d 23, 30 (Tenn. 1995), the indoctrination of judicial estoppel by Tennessee courts has been cogently explained by this Court in Sartain v. Dixie Coal & Iron Co., 266 S.W.2d 313 (Tenn. 1924):

> The distinctive feature of the Tennessee law of judicial estoppel (or estoppel by oath) is the expressed purpose of the court, on broad grounds of public policy, to uphold the sanctity of an oath.  The sworn statement is not merely evidence against the litigant, but (unless explained) precludes him from denying its truth.  It is not merely an admission, but an absolute bar.

Id. at 318.

Applying the law to the facts of this case, we find that the Wife is estopped from now asserting that two of the North Carolina orders that she previously sought

---

[11]The petition only referred to the November 22, 1994 order increasing the Husband's alimony and child support obligation and not the November 22, 1994 contempt order.

to enroll in the Chancery Court of Shelby County are void.[12]  Because the North

Carolina court, on two occasions, found the Wife to be in violation of the September

30, 1993 order, which the Wife previously sought to enroll, the Chancery Court of

Shelby County did not err by considering these contempt orders as a basis for

declining to exercise jurisdiction in accordance with Tenn. Code Ann. § 36-6-209(b).[13]

## CONCLUSION

After due consideration of the law and the record in this case, we find that the

trial court acted within its discretion in finding that "it was just and proper under the

circumstances" to decline jurisdiction due to the Wife's "violat[ion] [of] any other

provision of a custody decree of another state."[14]  Therefore, the decision of the Court

of Appeals is reversed, and the order of the trial court dismissing the Wife's complaint

is reinstated.

Costs on appeal are taxed to the Appellee, Lorraine Burton Spiers Marcus.

---

[12]The suggestion has been made that the Wife's April 18, 1995 petition only sought to incorporate the orders of the North Carolina court dated September 30, 1993 and November 22, 1994, to the extent that they addressed issues of alimony and child support.  However, a plain reading of the Wife's April 18, 1995 petition, discussing at length the custody arrangement and visitation schedule set forth in the September 30, 1993 order, clearly indicates that the Wife was seeking to incorporate all aspects of the North Carolina court's directives in these orders.  In fact, absolutely no language in the petition avers that the latter North Carolina orders should be incorporated to the extent that they address child support and alimony.  Moreover, this argument was never espoused by the Wife in her briefs before this Court or the Court of Appeals, nor do her briefs allege that the trial court acted improperly in dismissing her claims for a modification of the Husband's alimony and child support obligation.

[13]During oral argument, the Wife conceded that North Carolina retains jurisdiction to hold parties in contempt of valid orders.  Because we find that the Wife is now judicially estopped from arguing the invalidity of the September 30, 1993 order, it follows that North Carolina seemingly would have jurisdiction to hold the Wife in contempt of this order.  We express no opinion concerning whether the orders at issue would be void under the PKPA and North Carolina law, since the Wife is estopped from presenting this argument.

[14]We further note that the phrase "[u]nless required in the interest of the child" refers only to the first sentence in Tenn. Code Ann. § 36-6-209(b), which requires mandatory declination, and not the second sentence of the provision which is applicable in the present case.

_____

Frank F. Drowota, III,
Justice


**Concur:**

Anderson, C.J.
Birch, Holder, Barker, J.J.