IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE

# PATTY JANE FARMER JENKINS v. THOMAS ARLIN JENKINS

**Direct Appeal from the Circuit Court for Hamblen County**
**No. 98-CV-219     Kindall T. Lawson, Judge**

**No. E2000-00274-COA-R3-CV - Decided June 27, 2000**

Prior to trial in this divorce case, the parties divided and/or distributed marital and separate property with a total value of $1,597,861; however, they could not agree on how to divide the proceeds from the sale of two parcels of real property in Hamblen County. Following a bench trial, the court below awarded Patty Jane Farmer Jenkins ("Wife") the proceeds from the sale of one of the tracts -- the Lebanon Church Road property -- as her separate property. The court found that the other parcel -- described in the record as the Hickory Shadow Subdivision property -- was marital property and proceeded to equally divide the proceeds of the sale of the latter property between Wife and Thomas Arlin Jenkins ("Husband"). Husband appeals, arguing that, given the trial court's finding that Wife had testified falsely in a prior divorce proceeding regarding her ownership of the Lebanon Church Road property, she is judicially estopped from claiming ownership of that property, or its proceeds, in the present divorce action. Wife argues, by way of a separate issue, that the trial court erred in the manner in which it divided the net proceeds from the sale of the Hickory Shadow Subdivision property. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded**

SUSANO, J., delivered the opinion of the court, in which GODDARD, P.J., and SWINEY, J., joined.

Denise Stapleton, Morristown, Tennessee, for the appellant, Thomas Arlin Jenkins.

J. Elaine Burke and Ricky A.W. Curtis, Knoxville, Tennessee, for the appellee, Patty Jane Farmer Jenkins.

**OPINION**

I. *Facts*

Both of the parties are engaged in the real estate business. Wife is co-owner of Lakeway Title Company. Husband is also a co-owner of Lakeway Title Company; he is also a partner in Jenkins Rentals, a business engaged in the selling and renting of houses.

Prior to the parties' marriage in July, 1995, Wife was married to James Farmer. She and Farmer separated in 1990. On July 20, 1992, Husband purchased a lot on Lebanon Church Road. The next day, he conveyed that lot to his future wife, who was then still married to Farmer. The deed from Husband to Mrs. Farmer was never recorded.[1] In August, 1992, Husband's business commenced construction of a house on the Lebanon Church Road property. Mrs. Farmer paid for the construction and when it was completed, she used the house as her primary residence.

Farmer filed for divorce from Wife on August 27, 1992. In the course of the divorce litigation, Wife and Farmer filed with the court a document entitled "Joint Statement of Assets and Liabilities." Wife did not list her ownership of the Lebanon Church Road property in this statement. Wife was asked the following question in an interrogatory propounded by Farmer:

> Please list all items of property (individually or a collection thereof) over $500.00 in value owned by you or your spouse in any degree, whether it is individually or jointly held with your spouse or another party. This includes, but is not limited to real estate, stocks, bonds, bank accounts, retirements, pensions, jewelry, cars, furs, guns, boats, furniture, contracts, leases, royalties, copyrights, patents, and certificates of deposit.

Wife did not state her ownership of the Lebanon Church Road property in her response. Farmer and Wife were divorced by entry of a judgment on December 30, 1993. Wife appealed the judgment. A statement of evidence prepared by Wife's attorney for the purposes of that appeal states that "[s]ince December of 1992 [Wife] has resided at 7410 Lebanon Church Road *in a house that is owned by Jenkins Rentals*." (Emphasis added).

Wife testified in the present litigation that it was her understanding when preparing the statement of assets and liabilities and the answers to interrogatories that she was required to list only those assets acquired before she and Farmer separated in 1990. She pointed out that Farmer had not listed assets that he had acquired post-separation in the statement of assets and liabilities. She further asserted that she testified truthfully in the prior divorce proceeding about the ownership of the Lebanon Church Road property:

> Q    During the course of your divorce trial, was the Lebanon Church Road property ever discussed with you?
>
> A    It was never discussed.
>
> Q    During the divorce trial?

---

[1]Wife, who apparently handled the closings of both transactions, testified that she forgot to record both of these deeds. The deed to Husband was finally recorded in 1994.

A        Of mine and James Farmer's?

Q        Yes.

A        Denise –- Ms. Terry, I'm sorry, or Stapleton[2] –- asked me if
I wasn't building a house with Tom Jenkins, and I told her -– She
asked me who the owner of the property was, and I said the record
owner is Tom Jenkins. And at that time, I was not aware that his
deed had not been recorded. I actually thought he was the owner.
She didn't pursue any more questions and ask anything. She never
asked me if I had an interest in it.

As for the statement of evidence prepared by her attorney indicating that Jenkins Rentals owned the
Lebanon Church Road property, Wife testified that she had not reviewed it before it was submitted
to the Court of Appeals.

Husband and Wife were married in May, 1995. Approximately one month later, the parties
sold the Lebanon Church Road property. They received proceeds of $105,300 in a check made out
to both Husband and Wife. Wife placed $5,300 in a separate personal account. The remaining
$100,000 was placed in a certificate of deposit in both of the parties' names. In August, 1995,
Husband, acting on behalf of Jenkins Rentals, borrowed $60,000 against the certificate of deposit.
When he deposited the borrowed funds into the Jenkins Rentals account, he noted on the deposit slip
"Loan Pat's CD." Husband also executed a promissory note in favor of Wife for the $60,000, which
note was paid in full by November, 1995.

For most of their marriage, the parties resided in a residence on the Hickory Shadow
property. Husband had purchased this property prior to the marriage, but after their marriage, he
deeded the property to himself and Wife as tenants by the entirety. In June, 1998, the parties sold
the Hickory Shadow property, receiving proceeds of approximately $174,564. Of this amount, the
parties used $91,536.92 to pay off an outstanding debt on another piece of property owned by the
parties. Wife filed for divorce one month later.

## II. *Standard of Review*

Our review of this non-jury case is *de novo*; however, the record comes to us accompanied
by a presumption of correctness that we must honor unless the evidence preponderates against the
trial court's findings. Tenn. R. App. P. 13(d); **Wright v. City of Knoxville,** 898 S.W.2d 177, 181
(Tenn. 1995). No presumption attaches to the lower court's conclusions of law. **Jahn v. Jahn,** 932
S.W.2d 939, 941 (Tenn. Ct. App. 1996).

---

[2]Stapleton, who represents Husband in the present litigation, represented Mr. Farmer in the
prior divorce proceeding.

### III. *Lebanon Church Road Property*

In its final judgment, the trial court made the following findings of fact:

> [Wife] gave materially false testimony under oath in a prior divorce styled James Farmer vs. Patty Jane Farmer, Cause No. 92-341 Hamblen Chancery Court concerning her ownership interest in certain real property located on Lebanon Church Road...both in testimony and answers to interrogatories that Tom Jenkins was the owner of the said lands and intended to mislead the Court as to the fact that she held an unrecorded deed to the property. Wife is judicially estopped from asserting a contrary fact relative to the same real property in these proceedings.

The court went on to find, however, that the proceeds from the sale of the Lebanon Road Church Road property would be awarded to Wife "as her sole and separate property." The court explained its reasoning in remarks from the bench:

> Here's the way I see it, folks. The Lebanon [Church Road] house, we started off with the proposition as to whether or not there was judicial estoppel and all that stuff, and I'm not sure that's really the question anyway, when we get down to it, because the house disappeared, and we ended up with some money. And the money ended up in the bank in the form of a CD with both names on it, which I think would create a presumption that it's a piece of joint property.
>
> Then, I look at how that was handled. [Husband] borrowed some money against it and in so doing referred to it as Pat's CD, and he made a note to [Wife]. Both of those things indicated to me that that was [Wife's] money, and he was treating it as hers and calling it hers. And I notice he just a few minutes ago said: When money's involved with Miss -- He called it Miss Farmer at that time; you write it down, if it's her money. So I think he said, It's her money, and I'm going to so rule.

Husband argues that the doctrine of judicial estoppel precludes Wife from asserting any ownership at all in the property and therefore, so the argument goes, the trial court erred in awarding the proceeds of the sale of the property to Wife as her separate property.

Under the doctrine of judicial estoppel, a party is precluded from taking a position that is contrary to or inconsistent with a position taken by that party in a prior proceeding. *Marcus v. Marcus,* 993 S.W.2d 596, 602 (Tenn. 1999); *Werne v. Sanderson,* 954 S.W.2d 742, 745 (Tenn. Ct. App. 1997). The purpose of the doctrine is to prevent a litigant "from gaining an unfair advantage by taking inconsistent positions on the same issue in different lawsuits...." *Carvell v. Bottoms,* 900

S.W.2d 23, 30 (Tenn. 1995). Judicial estoppel "applies only where there has been a willful misstatement of fact -- that is, perjury." **Woods v. Woods,** 638 S.W.2d 403, 406 (Tenn. Ct. App. 1982).

As found by the trial court, the evidence preponderates that Wife made materially false statements in the prior divorce proceeding that were intended to mislead the court as to the ownership of the Lebanon Church Road property. Although Wife attempted to explain her prior testimony and statements, her explanations clearly were not accepted by the trial court. The trial court's determination of Wife's credibility is entitled to great weight on appeal. *See* **Massengale v. Massengale,** 915 S.W.2d 818, 819 (Tenn. Ct. App. 1995). Indeed, we will not reverse a trial court's decision on an issue that hinges on witness credibility "unless, other than the oral testimony of the witnesses, there is found in the record clear, concrete and convincing evidence to the contrary." **Tennessee Valley Kaolin Corp. v. Perry,** 526 S.W.2d 488, 490 (Tenn. Ct. App. 1974). Thus, we find that Wife should be estopped from asserting that she owned the Lebanon Church Road *property*.

We agree with the trial court, however, that the application of judicial estoppel is not determinative in this case. The fact that Wife is precluded by the doctrine of judicial estoppel from asserting that the *property* belonged to her does not preclude a finding that, *after the marriage*, Husband gave his interest in the *proceeds* from the sale of the property to Wife as a gift, thereby making the proceeds Wife's separate property. *See* T.C.A. § 36-4-121(b)(2)(D) (1996). Although Husband asserted at trial that he considered the proceeds to be joint property, Husband also indicated by his conduct during their marriage that the proceeds were the separate property of Wife. The evidence does not preponderate against the trial court's finding that the *proceeds* are Wife's separate property. This issue is found adverse to Husband.

IV. *Hickory Shadow Property*

When the parties sold the Hickory Shadow property, they used a portion of the proceeds, approximately $91,000, to pay off an outstanding debt on another piece of marital property known as the Deer Run residence. This real property was awarded to Husband by the parties' agreement. Wife argues that the trial court erred in dividing only those proceeds remaining after the parties paid the debt on the Deer Run residence. She contends that the court should have divided the net proceeds from the sale of the Hickory Shadow property, *i.e.*, $174,564.17, without further deduction for the Deer Run residence loan paid out of those proceeds.[3]

It is true that, in dividing marital property, courts frequently match a debt to the asset to which it is related and assign that debt to the party receiving the asset. *See* **Mondelli v. Howard,** 780 S.W.2d 769, 773 (Tenn. Ct. App. 1989)("When practicable, the debts should follow the assets they purchased."). However, this is not an inflexible rule. The paramount responsibility of a court is to

---

[3]Wife proposed that this could be accomplished by an award to her of some $86,846.96, being *all* of the net proceeds from the sale of the Hickory Shadow property that remained after the Deer Run debt had been paid.

divide the marital property and debts in an equitable manner. *See id.;* T.C.A. § 36-4-121(a)(1) (1996). However, a party is not entitled to an equitable share of a *given* asset, but only an equitable share of the total net marital estate. **Thompson v. Thompson**, 797 S.W.2d 599, 604 (Tenn. Ct. App. 1990). In arriving at an equitable division, a trial court, exercising its sound discretion, must carefully consider the factors set forth in T.C.A. § 36-4-121(c)(1)-(10) (1996). In the instant case, the parties' agreement, coupled with the awards challenged on this appeal, resulted in Wife receiving marital and separate property valued at $863,775 and Husband being awarded property of both species totaling $925,933.[4] The parties' agreement states that they are dividing "the bulk of their joint and separate property." The agreement then proceeds to divide that property but does not identify which of the specified items are marital property and which are separate property. Because of this, we cannot say how much of the marital property was awarded to each of the parties. It follows from this that we cannot find that the evidence preponderates against the trial court's ultimate decree dividing the parties' marital property. Therefore, we cannot say that the trial court abused its discretion in its division of the proceeds of the Hickory Shadow property. Accordingly, Wife's argument is found to be without merit.

## V. *Conclusion*

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellant. This case is remanded for enforcement of the trial court's judgment and collection of costs assessed below, all pursuant to applicable law.

---

[4]The parties agreement also divides some items of property for which no value is assigned. In the absence of values, we cannot say how, if at all, the division of these assets impacts the overall division of marital property.