IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 2003 Session

## BELINDA KULLMAN RHOADS v. CHRISTOPHER KULLMAN, SR.

**Appeal from the Chancery Court for Dickson County**
**No. 4573-96     Leonard W. Martin, Chancellor**

_____

**No. M2002-02716-COA-R3-CV - Filed March 29, 2004**

_____

In this custody case, the mother appeals the denial of her *Tenn. R. Civ. P.* 60.02  Motion for Relief from Judgment and Motion for New Trial.  The mother's trial counsel withdrew on the day of the final hearing and the mother failed to appear at the final hearing.  After hearing testimony from the father, the trial court found a significant and material change of circumstances had occurred and that it was in the best interest of the parties' minor children for custody to be changed to the father.  The mother contends that her failure to appear at the custody hearing was due to excusable neglect or inadvertence because her attorney had informed her "that the matter should be continued to allow her to obtain new counsel for further litigation in this matter."  For the reasons set out in this opinion, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

JAMES L. WEATHERFORD, SR.J., delivered the opinion of the court, in which WILLIAM B. CAIN, J., joined.   WILLIAM C. KOCH, JR., J., filed a dissenting opinion.

Kirk Vandivort, Charlotte, Tennessee, for the appellant Belinda Kullman Rhoads.

Jennifer Davis Roberts, Dickson, Tennessee, for the appellee Christopher Kullman, Sr.

### OPINION

In January of 2002, Mr. John Richardson began representing Mrs. Belinda Rhoads  in a custody case involving her two older children.  Mrs. Rhoads stated there was no fee agreement as Mr. Richardson had agreed to do her case on a pro bono basis.  Mr. Richardson's wife is the principal at the high school where Mrs. Rhoads teaches math.  Mr. Richardson informed Mrs. Rhoads when he first agreed to represent her that he would not represent her in a contested hearing as his practice primarily involved debt collection and real estate and not domestic relations.

On January 29, 2002, Mr. Richardson filed an answer to her ex-husband's counter-complaint to modify custody which had been filed in response to Mrs. Rhoads' complaint for modification of child support and judgment for arrears.

On April 11, 2002, Mr. Kullman filed a Motion to Set the matter for final hearing, with said motion to be heard on June 17, 2002. On April 19, 2002, Mr. Kullman filed a Notice of Hearing resetting this motion for hearing on May 2, 2002.

On May 15, 2002, an Agreed Order was filed setting the matter for final hearing on June 25, 2002. Jennifer Davis Roberts, counsel for Mr. Kullman, had signed the order for Mr. Richardson with his permission.

On June 4, 2002, Mrs. Rhoads received a letter from Mr. Richardson informing her that a mediation had been set for June 10, 2002, and enclosing a copy of a Motion for Withdrawal. On June 5, 2002, Mr. Richardson filed a Motion to Withdraw as Counsel stating that Mrs. Rhoads "has failed to respond to prior correspondence that is crucial for continued representation."[1] Mrs. Rhoads attended the unsuccessful mediation without Mr. Richardson 15 days before the final hearing date.

The transcript of the June 25, 2002 hearing reads as follows:

Ms. Roberts: Your Honor, there's a matter on the docket, Kullman versus Kullman, it's set for a contested custody case, but Mr. Richardson is here today on a motion to withdraw that we need to take up first before we go forward with the remainder of the case if it's okay to call that now.

Mr. Richardson: Your Honor, Mrs. Rhoads, she called a couple days ago and said she could not be up here today. We filed our motion to withdraw because there are certain contractual issues that she has never complied with and still not complied with.[2] The final hearing was originally set for today. I explained to Ms. Roberts that we had this issue and she said let's go ahead and set for the final hearing today anyway, go ahead and file your motion to withdraw, which is exactly what I did.

The Court: Motion to withdraw is granted, sir.

Ms. Roberts: Then we're ready to proceed.

---

[1] Mr. Richardson's correspondence file does not contain any mention of Ms. Rhoads' failure to respond to correspondence. The only letter asking Ms. Rhoads to contact his office dealt with the mediation which she did attend. Both Mr. Richardson and Mr. Ladd testified that Mrs. Rhoads was involved in her case. Mr. Richardson stated: "I never sensed or never felt any hesitation on Mrs. Rhoads' part. She was very active. She did not require encouragement. It was just a matter of phone calls, what do I need to do and I'll do it."

[2] Mrs. Rhoads testified that this case was done on a pro bono basis and there was no fee agreement.

Mr. Richardson:        She did advise me she could not be here today because of this prior obligation, I do want the court aware of that.[3]

Ms. Roberts:           ...Mrs. Rhoads knew this matter was set today and has chosen not to appear and we're ready to proceed, Your Honor.

The Court:            You may proceed.

The trial court found that all parties had notice of the hearing and that Mrs. Rhoads had failed to appear. After hearing testimony from Mr. Kullman, the trial court found that a significant and material change in circumstances had occurred and that it was in the best interest of the children that custody be changed to Mr. Kullman.

On July 23, 2002, new counsel for Mrs. Rhoads filed a Motion for Relief from Judgment and Motion for a New Trial pursuant to *Rule* 60.02 of the *Tennessee Rules of Civil Procedure*. In the motion Mrs. Rhoads submitted that her failure to appear at the custody hearing was due to excusable neglect or inadvertence because her attorney who was withdrawing from the case had informed her "that the matter should be continued to allow her to obtain new counsel for further litigation in this matter." She also stated that she "has consistently participated in these proceedings and merely relied on advice of counsel." Mrs. Rhoads had informed Mr. Richardson's office she was scheduled to teach vacation bible school and to accompany her husband on a job interview on June 25th.

An affidavit from Mr. Richardson accompanied the Motion:

In May 2002, I was contacted by attorney Jennifer Roberts' office regarding her client's desire to set this matter for a final hearing. I informed Ms. Roberts' office that I was filing a motion to be relieved as Mrs. Rhoads' attorney of record and that the earliest date my motion could be heard was on June 25, 2002. Ms. Roberts' office confirmed the June 25th date for my motion to be relieved as attorney of record for Mrs. Rhoads. At the same time Ms. Roberts' office insisted on the final hearing being set for June 25th as the next available Court date was not until August 2002. I explained to Ms. Roberts' office that having my motion set on the same date as the final hearing would not afford my client an opportunity to secure substitute counsel. Ms. Roberts' office relayed to me that the Court would, under the circumstances, probably reschedule the final hearing for August 2002. I informed Mrs. Rhoads of the date for both the motion to be relieved and the final hearing and that according to Ms. Roberts' office that the final hearing would probably be rescheduled to a later date, August 2002.

___

[3]According to Mr. Richardson, he did not know the reason why Mrs. Rhoads could not appear on June 25th at the time of his appearance before the court.

Mrs. Rhoads advised me that she had a scheduling conflict for June 25th and would not be able to attend the June 25th hearings. I advised Mrs. Rhoads that although the Court would probably reschedule the final hearing, it was not assured and if at all possible she should be present on June 25th. Mrs Rhoads insisted she could not appear on the 25th of June and I told Mrs. Rhoads that I would inform the Court on June 25th of her scheduling conflict and the reason for her not being present.

I appeared on June 25th and informed the Court that a conflict had developed between Mrs. Rhoads and myself, which required my motion to be relieved. I further informed the Court of Mrs. Rhoads' inability to be present and my conversation with Ms. Roberts' office that the Court would probably reschedule the hearings until August, 2002. Ms. Roberts, present at the June 25th hearings, confirmed our communications regarding my client's inability to be present on June 25th and that the Court would probably reschedule the final hearing for August, 2002. The Court granted my motion to be relieved, at which time I was granted leave to excuse myself from the Court.

Although, at no time did Ms. Roberts agree to a continuance, it was certainly my impression that a continuance of the case to August 2002 was a distinct possibility. This impression was relayed to Mrs. Rhoads.

Ms. Rhoads stated that she had never failed to communicate with Mr. Richardson's office. Ms. Rhoads testified that after she signed the counter-complaint she did not hear from Mr. Richardson's office until June 4, 2002, when she received a letter from his office regarding the June 10th mediation and a copy of his motion to withdraw as counsel.[4] She called Mr. Richardson's office that day and spoke to his paralegal Neal Ladd. The next day Mr. Ladd called her and informed her that the final trial date was set for June 25. She told Mr. Ladd that she could not attend the June 25 hearing because: 1) she was scheduled to teach vacation bible school; and 2) she was supposed to accompany her husband or be phone accessible for his job promotion interview.

According to Mrs. Rhoads, she understood from Mr. Richardson's office that the case would be continued and another court date set: "I talked to [Mr. Richardson]. We talked about the fact that he would be withdrawing and I needed to find new counsel, and I said I understood that, and that his understanding was that it would work, that when he withdrew that the case would be continued."

Ms. Rhoads stated that she talked with Mr. Ladd about whether she needed to appear on June 25th: "I asked him to please let me know that if I needed to appear completely, and he never did really answer my question. He never said yes, you need to be there regardless. He said that it would be continued."

_____

[4]Another letter from Mr. Richardson dated June 17, 2002 informs Ms. Rhoads that he intended to present the order for withdrawal to the Court on June 25th. The letter does not contain any mention that this is also the final hearing date, that she have other counsel present or whether she needs to be present at the hearing.

Mr. Richardson was out of town the first half of June at a conference. After he returned from the conference, he "did direct that Mrs. Rhoads be called and told that it was – how important it was for her to be in court on that 25th date – well, that she have an attorney present at that time because we had the motion to relieve and, of course, it was set for a final hearing. And that was pretty much the last communication I remember."

Mr. Richardson stated that he did not file a motion to continue the case because he "felt pretty comfortable" that on June 25th that given the circumstances that there would be a reset date since the case had not been continued before. He also cited the short time frame between the time he returned from the conference and the court date as a reason for not filing the motion. He also felt that her new counsel would be the one to file a motion for continuance in order to prepare for the case.

Mr. Neal Ladd, a paralegal who started working for Mr. Richardson on May 20, 2002[5], testified about his conversation with Ms. Rhoads: "There was a time that I spoke with Mrs. Rhoads and I relayed Mr. Richardson's message that – and she had called me prior to this and informed me she couldn't be there and I let Mr. Richardson know that and Mr. Richardson told me to relay to her that it is important that she be there, and that was what I did." He relayed to Mrs. Rhoads that Mr. Richardson thought that a continuance was a possibility, but did not say that there would be one or that an agreement for one had been reached. He recalled that she said she could not be there because of her husband's job promotion and that she may have said something about vacation bible school.

At the conclusion of the hearing, the trial court dismissed the *Rule* 60.02 motion by order entered October 16, 2002.

*Tennessee Rule of Civil Procedure* 60.02 allows the trial court to relieve a party or its legal representative from a final judgment, order or proceeding due to mistake, inadvertence, surprise or excusable neglect. *Rule* 60.02 provides in pertinent part:

> 60.02 Mistakes - Inadvertence - Excusable Neglect - Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect ....

*Tenn. R. Civ. P.* 60.02.

When a party seeks relief under *Rule* 60.02, "the burden is upon movant to set forth in a motion or petition, or in affidavits in support thereof, facts explaining why movant was justified in failing to avoid mistake, inadvertence, surprise or neglect." *Toney v. Mueller Co.*, 810 S.W.2d 145, 146 (Tenn. 1991) (citations omitted). Appellate courts review trial court decisions on *Rule* 60.02

---

[5]Mr. Ladd acknowledged that because one or two temporary workers had preceded him, he had to do a lot of organizing of Mr. Richardson's statewide practice and his ability to recall exact dates was "shaky" during this time period.

relief using an abuse of discretion standard. *McCracken v. Brentwood United Methodist Church*, 958 S.W.2d 792, 795 (Tenn.Ct.App. 1997). Under this standard a trial court's ruling should not be reversed "unless it affirmatively appears that the trial court's decision was against logic or reasoning, and caused an injustice or injury to the party complaining." *Marcus v. Marcus*, 993 S.W.2d 596, 601 (Tenn. 1999) (quoting *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)).

The trial court found that her failure to appear was not inadvertent because she had known about the date of the hearing for some time and had chosen not to be there.[6] Also the trial court found that it was not excusable because "she knew from the outset that the lawyer she was dealing with was not going to represent her at a hearing." In ruling on the motion the trial court stated:

> Once the hearing date is set, the only entity that can change that hearing date unilaterally is the court. One side can't decide on their own that I'm going to put it off.

> Now this is not rocket science. All lawyers are well aware that once a hearing date is set it is set unless and until the court moves it or continues it, and that's pretty basic. And that coupled with Mr. Richardson's testimony is he advised her it was important for her to be here.

> I just don't believe you carried your motion.[7]

It was undisputed that Mrs. Rhoads knew from the outset of his representation that Mr. Richardson would not represent her at a final hearing. She knew by June 4th that Mr. Richardson was filing a motion to withdraw from her case. Mrs. Rhoads testified that she learned of the final hearing date on or around June 5th from a conversation with Mr. Ladd.

Where the trial judge has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, on review considerable deference must still be accorded to those circumstances. *Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315 (Tenn. 1987).

---

[6] Mrs. Rhoads knew the case was set for hearing on June 25th. *Rule* 60.02 motions have been denied in cases where the client was not personally aware of the entry of a final decree. "In *Moody v. Moody*, 681 S.W.2d 545 (Tenn. 1984), the wife sought relief from the final divorce decree pursuant to Rule 60.02, claiming that she had not personally received notice of the final decree's entry until after the time to appeal had expired. Our supreme court held that the wife was not entitled to relief because at the time the final decree was entered the wife was represented by counsel who had approved the decree entered by the trial court and knew of the entry. *Id.* Moody held that, 'counsel's knowledge must be attributed to his client, if the actions of the court are to have any efficacy.'" *Davidson v. Davidson* 916 S.W.2d 918, 924 (Tenn. Ct. App. 1995)(quoting *Moody v. Moody*, 681 S.W.2d at 546).

[7] The trial court noted that this was not a motion to set aside a default judgment, but to set aside a judgment after a hearing. Courts have construed these rules more liberally in setting aside a default judgment than those cases where the judgment in question follows a full trial on the merits. *See Tennessee Department of Human Services v. Barbee*, 689 S.W.2d 863 (Tenn 1985).

Although the record in this case contains inconsistencies as to the reasons for withdrawal that we find troubling, this was apparent to the trial court at the time of the hearing. The trial court was in the best position to judge the credibility of the witnesses as to testimony regarding whether Mrs. Rhoads was told she needed to be present in court on June 25th.

Counsel for Mrs. Rhoads argues in its brief that Mr. Richardson's failure to file a motion for continuance constituted excusable neglect. We find that Mr. Richardson's handling of this matter cannot be characterized as *excusable* neglect within the meaning of *Rule* 60.02.

After reviewing the record in this case we are unable to say that the trial court abused its discretion in denying the *Rule* 60.02 motion to set aside the judgment entered in this case.

CONCLUSION

The judgment of the trial court is affirmed. Costs are taxed to the appellant.

_____
JAMES L. WEATHERFORD, SR.J.