IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 10, 2004 Session

## J.E.B. v. J.C.W.

Appeal from the Juvenile Court for Blount County
No. 12574     William Terry Denton, Judge

No. E2003-02782-COA-R3-JV

This is a child custody case.  After a trial, the trial court designated the Father as primary residential custodian of the parties' child.  Mother appeals, arguing that the trial court should have awarded her primary residential custody.  We find that the evidence does not preponderate against the trial court's finding that the child's best interests are served by awarding Father primary residential custody.  Consequently, we affirm the judgment of the trial court.

**Tenn.R.App.P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed;
Case Remanded**

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J. and CHARLES D. SUSANO, JR., J., joined.

Kevin W. Shepherd, Maryville, for the Appellant J.C.W.

Sandra E. Myatt, Maryville, for the Appellee J.E.B.

## OPINION

### I. Factual Background and Procedural History

The parties in this case were never married.  Father filed a petition to establish paternity of their child (DOB Sept. 29, 1998) on July 17, 2001, shortly before the parties separated.  Father's paternity was admitted and established by agreed order entered by the court on August 20, 2001.  The parties had been living together in Maryville, Tennessee until the time of Father's petition, but shortly thereafter, Mother moved to Smithville, Tennessee in DeKalb County.

The agreed order establishing Father's paternity also provided that custody of the child was granted "jointly and equally" to the parties, and that they would split parenting time by alternating seven-day periods of time with the child.  The agreed order further provided that both parties desired to continue as joint and equal custodians of the child until the child started school.  The order further

provides that "[t]his custody arrangement shall continue until such time as the mandatory age for school attendance at which time, if the parties are unable to agree upon a primary residential custodian, this matter shall be brought back before the Court for further consideration."

After Mother's move to Smithville, the parties maintained their practice of spending alternating weeks with the child. On February 8, 2002, Mother filed a petition to modify the custody and visitation arrangement, noting that "in one year, the parties' child will be enrolled in school" and alleging that "it is important that the child have one home for purposes of consistency and stability for the child." Mother requested the court designate her the primary residential custodian. Father filed a counter-petition in which he sought primary residential custody of the child.

On November 22, 2002, a hearing was held before the juvenile court referee, at which the parties each testified and called witnesses. At the conclusion of that hearing, the referee announced his decision that Father would be the primary residential custodian. Mother then filed a petition for rehearing by the Blount County Juvenile Court judge, which was granted. On May 28, 2003, another full hearing was held. At the conclusion of the second hearing, the trial court ordered each party to submit a proposed parenting plan. After the parties complied with this request, the trial court entered an order on October 23, 2003 finding that "the best interest of the child would be that the Father be designated primary residential custodian of the minor child[.]" Although it is not completely clear from the record, it appears that the trial court adopted and incorporated Father's parenting plan in its final judgment. Mother appeals.

## II. Issue Presented for Review

Mother has not included a statement of the issues presented for review in her brief. Based on our review of her brief and oral argument, it is clear that the sole issue Mother raises in this appeal is as follows:

Whether the trial court erred in designating Father the primary residential custodian of the child.

## III. Standard of Review

In this non-jury case, our review is *de novo* upon the record of the proceedings below; but the record comes to us with a presumption of correctness as to the trial court's factual determinations which we must honor unless the evidence preponderates against those findings. Tenn. R.App. P. 13(d); *Wright v. City of Knoxville,* 898 S.W.2d 177, 181 (Tenn.1995); *Union Carbide Corp. v. Huddleston,* 854 S.W.2d 87, 91 (Tenn.1993). The trial court's conclusions of law, however, are accorded no such presumption. *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 35 (Tenn.1996); *Presley v. Bennett,* 860 S.W.2d 857, 859 (Tenn.1993).

## IV. Analysis

In cases involving a custody dispute, courts are guided by Tenn. Code Ann. § 36-6-106. That statute provides as follows in part pertinent to the present case:

> (a) In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, such determination shall be made upon the basis of the best interest of the child. The court shall consider all relevant factors including the following where applicable:
>
> (1) The love, affection and emotional ties existing between the parents and child;
>
> (2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
>
> (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment. . .
>
> (4) The stability of the family unit of the parents;
>
> (5) The mental and physical health of the parents;
>
> (6) The home, school and community record of the child;
>
>         *          *          *
>
> (9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and
>
> (10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interest of the child.

The parties agree that a material change in circumstances has occurred in that the child has now reached school age and, because the parties live over two hours apart, they cannot continue alternating custody every week with a child enrolled in school. Circumstances now dictate that one of the parents be declared the primary residential custodian, the one who lives in the place where the child will attend school. In its order, the trial court made no findings of fact beyond its determination that awarding Father primary residential custody served the child's best interests.

In this case, considering the applicable statutory factors, Mother has, simply stated, pointed to very little evidence suggesting that the trial court erred in its ruling. This is a very difficult case

in that both parties appear to have done a good job of parenting and are qualified and capable of raising the child. The Juvenile Court referee found that it was a "rare situation that the court has to deal with exceptionally fine parents, and I do believe that each of you are truly trying to be the best parent that you can be notwithstanding the frustrations that life brings, and having the separation of distance, and not having a relationship between the two of you except through your child." Mother states in her brief that "the evidence. . .shows that each parent appears to be equally positioned in almost every criteria found in the law for determining custody." Mother argues that she "excels in at least the area of being able to provide more hands-on care, as well as having an extended family in the area of her residence." Mother, who has recently remarried, points to the testimony that she is able to stay home with the child during non-school hours, while Father has to work, and also that she has more extended family living near her than does Father.

Father responds by highlighting evidence that Mother has been uncooperative and uncommunicative regarding the child's medical needs and recreational activities, and she has refused to be flexible in scheduling visitation. On one occasion, this lack of communication resulted in the scheduling of the same minor surgical procedure for the child with two different doctors at two different times. Father also testified that he has remained in the same Maryville residence in which the parties lived until their separation, whereas Mother testified that she has resided in three different places in the two years since the separation. Father testified that on occasion Mother had lost her temper and cursed at him in front of the child.

A determination of custody and visitation often hinges on subtle factors such as the parents' demeanor and credibility during the trial proceedings. *Gaskill v. Gaskill,* 936 S.W.2d 626, 631 (Tenn.App. 1996). In this case, it appears probable that the court's determination of the parties' relative demeanor and credibility played a significant role in its ruling. At the hearing before the trial court, Mother was cross-examined on four separate occasions by the playing of an audiotape of telephone conversations between her and Father. While it appears that these tapes were played in an attempt to bring Mother's credibility into question, the tapes' contents are not contained in the record before us.

Under these circumstances, we are guided by the following comments and observations made recently by this Court in a custody dispute case, which are pertinent to the present case:

> The credibility of witnesses is a matter that is peculiarly within the province of the trial court. *See Bowman v. Bowman,* 836 S.W.2d 563, 567 (Tenn.Ct.App.1991). That court has a distinct advantage over us: it sees the witnesses *in person.* Unlike an appellate court--which is limited to a "cold" transcript of the evidence and exhibits--the trial court is in a position to observe the demeanor of the witnesses as they testify. This enables the trial court to make assessments regarding a witness's memory, accuracy, and, most importantly, a witness's

truthfulness. The cases are legion that hold a trial court's determinations regarding witness credibility are entitled to great weight on appeal. *See, e.g., Massengale v. Massengale,* 915 S.W.2d 818, 819 (Tenn.Ct.App.1995). In the absence of unrefuted authentic documentary evidence reflecting otherwise, we are loathe to substitute our judgment for the trial court's findings with respect to the credibility of the witnesses.

"Trial courts are vested with wide discretion in matters of child custody...." *Varley v. Varley,* 934 S.W.2d 659, 665 (Tenn.Ct.App.1996) (quoting *Koch v. Koch,* 874 S.W.2d 571, 575 (Tenn.Ct.App.1993)). This being the case, we will not reverse a trial court's decision regarding custody unless the record clearly demonstrates that the court has abused its discretion. *Otis v. Cambridge Mut. Fire Ins. Co.,* 850 S.W.2d 439, 442 (Tenn.1992). As the Supreme Court has cautioned, "a discretionary judgment of a trial court [should not be disturbed] unless it affirmatively appears that the trial court's decision was against logic or reasoning, and caused an injustice or injury to the party complaining." *Marcus v. Marcus,* 993 S.W.2d 596, 601 (Tenn.1999) (quoting *Ballard v. Herzke,* 924 S.W.2d 652, 661 (Tenn.1996)).

*Lockmiller v. Lockmiller,* 2003 WL 23094418 at *4, 2003 Tenn.App. LEXIS 953, C/A No. E2002-02586-COA-R3-CV (Tenn.App.E.S. filed Dec.30, 2003) (emphasis and brackets in original).

## V. Conclusion

Bearing the above in mind, and having considered the pertinent statutory factors and the record as a whole, we do not find that the evidence preponderates against the trial court's finding that the child's best interests are served by awarding Father primary residential custody.  We affirm the judgment of the trial court.  The case is remanded for collection of costs below.  Costs on appeal are assessed to the Mother, J.C.W., for which execution may issue, if necessary.

_____
**SHARON G. LEE, JUDGE**